[Civ. No. 25495. Second Dist., Div. Four. Dec. 27, 1961.]

R. A. HODGES, Plaintiff and Respondent, v. STANDARD ACCIDENT INSURANCE COMPANY et al., Defendants and Appellants.

Gilbert, Thompson & Kelly and Jean Wunderlich for Defendants and Appellants.

Neil D. Heily and Edward L. Lascher for Plaintiff and Respondent.

BALTHIS, J.—On September 5, 1953, at the controlled intersection of certain highways, the automobiles of plaintiff Hodges and Richard Baurmann were involved in a collision. Each driver contended that he had the green light in his favor on entering the intersection. Standard Accident Insurance Company had issued a policy in favor of the Baurmanns (the singular is used hereafter) and the policy limits were $10,000 for damages for personal injuries to one person and $20,000 for damages to more than one person. By the terms of the policy the insurer was bound to defend any actions for damages claimed against the insured, and also was required to make such investigation and settlement of any claim it deemed expedient.

Hodges filed suit against Baurmann for $50,000 damages and in that action Standard defended its insured, Baurmann. There were three trials of the personal injury action. The first and second trials were favorable to defendant but in each instance plaintiff was granted a new trial on the particular ground of insufficiency of evidence to justify the verdict.

The third trial resulted in a plaintiff's verdict awarding damages in the sum of $35,721.20. Defendant's motion for a new trial was denied upon the condition that plaintiff within five days remit the sum of $8,000 and consent to the entry of a judgment in the sum of $27,721.20. Plaintiff consented to this condition. Defendant appealed said cause to the District Court of Appeal and by remittitur filed July 2, 1957, the judgment was affirmed. The appellate court referred to the "hopeless conflict" in the evidence (*Hodges* v. *Baurmann*, 150 Cal.App.2d 576, 577 [310 P.2d 24]). Standard then paid the sum of $12,003.26 in partial satisfaction of the judgment which constituted the full amount of its policy limits together with interest and costs. Thereafter Baurmann filed a petition in bankruptcy with reference to the excess amount of the judgment and was adjudicated a bankrupt.

In the personal injury trials mentioned above, plaintiff was represented by the attorney who represents him here and who, after his employment and before the first trial, made an offer of settlement to the adjuster for Standard in the sum of $5,000. This offer was never withdrawn until after the

jury in the third trial rendered its verdict in favor of the plaintiff.

The present action was filed in 1958 and plaintiff sought damages in the amount of the excess personal injury judgment (over and above the policy limits) against Standard and John W. Medlen, its adjuster, upon the theory that said defendants acted in bad faith toward Baurmann in refusing to settle the case for the sum of $5,000 prior to the time of plaintiff's ultimate verdict and judgment. The complaint alleged that plaintiff Hodges is the successor in interest to Baurmann upon an alleged claim against Standard arising out of said excess judgment, and at the time of pretrial plaintiff obtained an amendment of the complaint to show that the trustee in bankruptcy (of the insured Baurmann) had made an assignment of the cause of action to plaintiff. Upon the trial before the court sitting without a jury, the court gave judgment in favor of plaintiff and against Standard and Medlen for the sum of $19,307.93, together with interest and costs, and defendants appeal from such judgment.

In addition to the chronology of the legal actions mentioned above it is important to note certain relevant facts as follows:

(a) After the personal injury action (*Hodges* v. *Baurmann*) was filed in March 1954, the insurer Standard sent a letter dated March 30, 1954, to Baurmann, the insured, the form of which is generally known as an "excess letter." This letter advised the insured that the plaintiff Hodges was seeking damages of $50,817.61, the sum in excess of the policy, and that while the insurance company was entitled to defend the action by counsel of its own choice, the insured, if he thought it advisable, might employ counsel of his own to be associated with the insurer's counsel.

(b) Prior to the filing of the personal injury action Standard made an investigation of the accident, taking statements from the insured (and members of insured's family who were occupants of the car) and a representative of Standard also interviewed an officer of the California Highway Patrol (not a witness). After an interview with the insured Baurmann the claims supervisor reported to his company (Standard):

"The assured makes a very good appearance and seemed very truthful in regards to the signal being in his favor, and in the event it was just changing to amber as he entered the intersection he feels that the claimant failed to make any stop at the intersection and jumped the signal and entered it without due caution."

(c) On December 17, 1953, the claims adjuster for Standard, the defendant Medlen, made a memorandum:

"On the afternoon of December 16th, I contacted Mr. Neil Heily at this office regarding this case and told him that we had again interviewed our insured and his passengers and we could find no evidence whatsoever that his client, Hodges, was doing anything else but running a red light.

"It is possible that this case is worth $150.00 to $200.00, maybe $250.00, but knowing Heily I feel he will probably file."

And in a report dated December 18, 1953, he reported to his company:

"Our named insured and three members of his family were traveling in a general northerly direction on 101-A. All state that our insured entered the intersection of 101-A and 101 with the green light, further claiming that #2 ran the signal and was struck on the right side by our insured car.

" . . . . . . . . . . . . .

"I have indicated to Attorney Heily that this case may have a bare nuisance value but as contained in my memo for File 12-17-53, our chances of settling cases with Mr. Heily before have been practically nil."

(d) Depositions of plaintiff Hodges and the insured Baurmann were taken on June 23, 1954, prior to the first trial. The injuries of plaintiff as shown by his deposition were summarized in a report to the company as follows:

"Insofar as his injuries were concerned, the plaintiff testified that his right shoulder, arm and side were injured. At the time of the deposition, he complained of a continued pain in his right shoulder and arm. However, he had not been to a physician for treatment for nine months prior to the deposition.

"He related that Dr. Blue's bill was $70.00 and the Foster Hospital bill for x-rays was $15.00. At the time of the accident, he testified that he was employed as described before and earning $2.01 per hour for forty hours per week. He was out of work and on sick leave from September 5th through September 28th."

(e) On August 20, 1954, before the first trial, Freeman A. Reed, the claims manager of Standard, sent a memo on the case to the home office as follows: "Memo home office. Not dangerous either on liability or damages."

In the report to the claims manager, the agent of the company gave his opinion of the settlement value:

"In my opinion this case has a settlement value of approximately $500.00. . . . Insd. has filed a cross-complaint for property damage, alleging a total of $929.19 including loss of use. In the absence of any disinterested witnesses, I think that a proper disposition of these cases would be a wash-out on both sides."

(f) The insured Baurmann (as defendant in the personal injury actions) was represented by the attorney selected by the insurer, Charles H. Lynch. Mr. Lynch had extensive experience in personal injury work since 1933 and testified that on the subject of liability he considered it a "50-50 case" because of the type of accident. Before the first trial he thought the chances were slightly better than "50-50" because of the cross-complaint filed by the insured. Also, after each of the first two trials and even though the judge in each case had granted a new trial to the plaintiff, he felt that he would still win the case. Before the third trial, Mr. Lynch's opinion was, ". . . I felt I should win it again. I had won it twice and I should win it again. As a matter of fact, the verdict in the first trial was ten to two in my favor. The second time it was eleven to one, and I felt the third time I would get a unanimous verdict. . . ." On the question of damages Lynch's opinion was that if liability was *assumed,* the case was worth from $2,500 to $3,500.*

(g) The offer made by the plaintiff's attorney, Mr. Heily, was made to the adjuster, defendant Medlen, but this was never communicated by Mr. Heily to Standard's and insured's attorney, Mr. Lynch. Plaintiff made only the one offer of $5,000 and this was never withdrawn (until the verdict in the third trial) or modified.

(h) Baurmann never made any complaint as to the method of handling the case by Standard. He testified at each trial of the personal injury action and his testimony in substance was that the signal was in his favor and that the plaintiff Hodges had run the red light. Standard, in defending the

*His testimony was:

"Q. Mr. Lynch, prior to the third trial had anything occurred or come to your attention in the course of two trials that would cause you to believe that in the event of a plaintiff's verdict you would have anticipated that the verdict could have been above the insurance policy limits of $10,000? A. Definitely not. At no time did I feel that.

"Q. Even before the third trial, assuming that there were a plaintiff verdict, what was your opinion as to the potential value? A. Before the third trial?

"Q. Before the third. A. I never felt the case was worth any more than twenty-five or thirty-five hundred dollars."

personal injury action, always accepted the testimony of Baurmann as they had never discovered any evidence which substantiated the plaintiff's version or which indicated the insured was negligent, and plaintiff's only independent witness (a Mr. Raines) who was produced after the first trial was, in Mr. Lynch's opinion, "successfully impeached."

(i) After the third trial which resulted in judgment for plaintiff in the personal injury action, the insured Baurmann filed his bankruptcy petition and was adjudicated a bankrupt. In the administration of the bankruptcy case, the bankrupt did not list any cause of action against Standard as an asset and it was treated as a "no asset" case. There was no evidence in the case at bar that said asset or any cause of action in favor of Baurmann, the insured, against Standard was actually administered in the bankruptcy proceeding. After the bankruptcy estate proceeding was closed it was subsequently reopened on petition by attorney Heily and his reference to the alleged asset is in part as follows:

"That there is a possibility that as part of the above named bankrupt's estate there may be a claim against Standard Accident Insurance Company and John W. Medlen, its agent, for bad faith failure on the part of said company and said agent to settle a personal injury claim against the bankrupt for less than the policy limits of the policy of insurance issued by such company to the bankrupt on an automobile in which the bankrupt had an interest on September 5th, 1953."

Upon the petition being granted, a successor trustee in bankruptcy was appointed who executed a "disclaimer, abandonment and transfer" of any claim against Standard and Medlen to Hodges.

The trial court made findings of "bad faith" setting forth specifically the facts or elements constituting bad faith on the part of Standard. Appellant has raised the question on this appeal as to whether the findings of bad faith by the trial court are supported by the evidence, and also as to whether such findings support the judgment.

The trial court's findings of "bad faith" on the part of the insurer may be summarized as follows: Standard acted in bad faith because it refused to accept the offer of plaintiff to settle the action for $5,000 before the third trial; defendants (Standard and Medlen) did not notify the insured of any offer made by the plaintiff to settle the action and failed to inform the insured of the results of the investigation made by the defendants after the accident and failed to advise of the

opinion upon which the rejection of the offer of the plaintiff to settle said case was based; before the first trial defendants knew their chances of defeating liability "were approximately even" and after the first trial defendants knew or should have known that the chances of defeating liability were "less than half" and knew or should have known that after the second new trial was granted "their chances of defeating the liability feature were even less," but nevertheless defendants chose to go through the third trial; defendants, after the first trial, failed to take into consideration the testimony of Dr. Blue who testified to the effect "that Hodges had a shoulder separation which caused plaintiff permanent disability of the shoulder joint of 20%"; that defendants failed to call in their own doctor, Dr. Moore, who had examined plaintiff Hodges before the first trial because his testimony would "accentuate" the injuries of plaintiff; that defendants knew or should have known that after the first trial a "verdict in excess of the policy limit was *possible* and after the second trial a verdict in excess of the policy limit was *probable*" (emphasis added); that the offers made by defendants to settle the case did not amount to "nuisance value" and the failure of defendants to increase this offer was caused by their dislike of plaintiff's attorney; that after the new trial was granted in the first case, defendants should have reappraised the accident case for settlement purposes; that defendants should have conferred with the insured and should have renewed negotiations for settlement; that after the motion for new trial was granted after the second trial, defendants owed even a greater duty to reevaluate the case; instead of considering the evidence and circumstances the defendants, after the second new trial was ordered, criticized the two judges who had granted the new trials.

▮▮▮ Liability of an insurer for failure to exercise good faith to the insured in acting upon an offer of settlement within the policy limits is well established in California. In the first case recognizing such liability, *Brown* v. *Guarantee Ins. Co.*, 155 Cal.App.2d 679 [319 P.2d 69], it was held that the basis of liability upon the part of an insurer is bad faith, rather than negligence, in the handling of a compromise offer of settlement. In the *Brown* case the question was one of pleading, that is, whether the complaint stated facts sufficient to constitute a cause of action. The complaint alleged, among other things, that the law firm which defendant hired to defend the action did not act in the best interests of the

insured; that plaintiff offered to settle the litigation for $5,000; that defendant refused to make any offer of compromise before trial; that at the trial defendant made offers of settlement in the amounts of $3,000, $3,500, and $4,000, but at no time would pay the policy limit; that defendant "throughout maintained that unless [it] could save some money on the settlement, [it] had no reason to settle": and that this attitude was in complete disregard of the insured's rights and best interests. The court held that a cause of action in favor of the insured was stated. ▪▪▪ The court mentions the factors to be considered in deciding the issue of good faith as "the strength of the injured claimant's case on the issues of liability and damages; attempts by the insurer to induce the insured to contribute to a settlement; failure of the insurer to properly investigate the circumstances so as to ascertain the evidence against the insured; the insurer's rejection of advice of its own attorney or agent; failure of the insurer to inform the insured of a compromise offer; the amount of financial risk to which each party is exposed in the event of a refusal to settle; the fault of the insured in inducing the insurer's rejection of the compromise offer by misleading it as to the facts; and any other factors tending to establish or negate bad faith on the part of the insurer." (P. 689.)

In *Ivy* v. *Pacific Automobile Ins. Co.*, 156 Cal.App.2d 652 [320 P.2d 140], the insured brought the action against the insurance company and liability was based upon the facts that the policy limits involved were $50,000 and that without even communicating with the insured, the attorneys for the insurance company had stipulated to a judgment against the insured in the amount of $75,000. The court points out the facts constituting the bad faith as follows: "Without investigation of the facts, and without informing Ivy, it stipulated that Sawatzke was the agent of Ivy, personally, that one of the corporate defendants was the *alter ego* of Ivy, and then stipulated to a judgment in excess of the policy limits." (P. 660.)

In *Comunale* v. *Traders & General Ins. Co.*, 50 Cal.2d 654 [328 P.2d 198], it appeared that Sloan was insured by the defendant and that the policy limits were $10,000. The plaintiffs in the action, Mr. and Mrs. Comunale, were struck in a pedestrian crosswalk by a truck driven by the insured Sloan. On the second day of the personal injury trial Sloan, the insured, advised the defendant the case could be settled for

$4,000 and that it was highly probable the jury would return a verdict in excess of the policy limits. The defendant insurer refused to settle and also refused to defend the action. It was held that an insurer who wrongfully declines to defend and who refuses to accept a reasonable settlement within the policy limits when there is great risk of a recovery beyond those limits is in violation of its duty to the insured.

In *Davy* v. *Public National Ins. Co.*, 181 Cal.App.2d 387 [5 Cal.Rptr. 488], the action was brought by the insured Davy against the insurance company and it appeared that the policy limits were $5,000. One Manuel, a city police officer, had sustained serious injuries in a collision between the motorcycle he was riding and one of Davy's taxicabs. Suit was brought for $225,000. About two weeks prior to trial the attorney for Manuel offered to settle for $4,500 but the offer was rejected by the insurance company. It appeared that Davy had been advised by the insurance company's lawyer that the company would pay $3,000. Thereafter Davy obtained the services of an independent attorney and subsequently demanded that the insurance company settle the case within the policy limits. The insurance company then advised Davy that if he did not withdraw his demand respecting settlement the policy would be cancelled. Davy refused to withdraw his demand and the cancellation was effected. A jury brought in a verdict against Davy for $24,268. After the insurance company paid the policy limit of $5,000, Davy brought an action against the insurance company to recover as damages the balance of the unpaid personal injury judgment against him. The matter was tried by a jury which rendered a verdict against the insurance company. Upon appeal the court affirmed the judgment in favor of the insured holding that the jury could have found bad faith upon the basis that "if the policy had no liability limits, the insurance company would have been concerned about the amount of the adverse verdict as well as about the fact of such a verdict." (P. 400.) The court points out that while the matter had been given intelligent consideration the insurance company did not give proper consideration to the offer of settlement and did not act in fairness to the insured and as though the policy were without limits. The court said at page 399: "The record before us does not sustain a finding that the consideration given to the offer of settlement by the defendants was not an intelligent consideration; their investigation was sufficiently adequate and diligent and their legal advisors

574

sufficiently qualified to meet the demands of good faith. Nor does the record establish that the insured was not given the opportunity to protect his own interests. The remaining and determinative factor is whether the defendant insurance company would have accepted the offer of settlement under the circumstances present if there had been no limit to its liability. This inquiry arises out of the obligation of the insurer to give equal consideration to the interests of the insured as it gives to its own interests.''

Whether or not the insurer is guilty of bad faith is a question for the trier of fact in each case. But such determination becomes a question of law when from uncontroverted evidence a reasonable man following the law can draw but one conclusion on the issue. (*Davy* v. *Public National Ins. Co.*, 181 Cal.App.2d 387, 400 [5 Cal.Rptr. 488].)

The general rules as to the liability of the insurer are: ''Good faith implies honesty, fair dealing and full revelation. . . . Bad faith implies dishonesty, fraud and concealment. . . . Neither mistaken judgment nor unreasonable judgment is the equivalent of bad faith. . . . As a consequence, liability upon the part of the insurer for refusal to accept an offer of settlement may not be predicated upon its failure to correctly predict the outcome of the action it is defending.'' (*Davy* v. *Public National Ins. Co.*, 181 Cal. App.2d 387, 396 [5 Cal.Rptr. 488].)

Applying the general rules to the instant case we conclude the findings of the trial court as to bad faith are not supported by the evidence or the law.

An insurer does not act in bad faith to the *insured* where it honestly believes and has cause to believe that any probable liability will be less than the policy limits. The uncontroverted evidence here is that the attorney for the insurer who tried all three of the personal injury actions for the insurer (an attorney with long experience in the personal injury field) felt that even *assuming* liability, the case was worth from $2,500 to $3,500. There was doubt as to liability because he felt it was a 50-50 case for liability. This attorney, Mr. Lynch, had examined Dr. Blue, the injured claimant's doctor, in the first two trials and his testimony had been substantially the same; he had also personally interviewed Dr. Moore, the insurance company's doctor; and he had the deposition of plaintiff Hodges taken prior to the first trial and heard Hodge's testimony in the first two trials with reference to the injuries sustained. Therefore, Mr. Lynch had made

an adequate examination upon which to base his judgment as to the possible value of the case.

As to the injuries sustained, Mr. Hodges lost approximately three weeks from his work with a loss of wages in the amount of $241.20. His total medical expenses were $100; his property damage was less than $400, and he was never hospitalized. His injury was a shoulder separation with a permanent disability of about 20 per cent. In other words, his range of shoulder motion was somewhat less than normal and he suffered pain in connection with the injury. These injuries do not in the light of general experience and general run of jury verdicts suggest that a judgment in excess of $10,000 would be probable. ██ The exercise of good faith does not require that the unusual, out-of-the-ordinary verdict be anticipated. ██ The opinion held by the insurer (prior to the third trial) that a verdict would not reach or exceed $10,000 cannot be said to be so unrealistic, unfair, unintelligible, or dishonest as to amount to bad faith. The act of appraising a case is, of course, not an exact science and there is room for a variety of honest judgments. The insurer must appraise the case prior to the trial upon its general experience and the insurer should not be penalized for its failure to predict accurately the action of a jury. The suggestion in some cases that the amount of the actual verdict as rendered, after the insurer has exercised its judgment as to value, is an indication that there was probable liability or that it indicates the probable amount of liability is not sound or logical. We do not believe the test of bad faith should be determined by hindsight. Experience shows that in looking ahead no one can predict what any particular jury will do.

The critical issue of this case, then, is whether the insurer Standard was acting honestly and in good faith (as to the insured) in its belief that the case was worth from $2,500 to $3,500, that is, an amount substantially less than the policy limits. For, if in its judgment, before the third trial, there was little or only the most remote probability that any verdict would be in excess of the policy limits, then there was no conflict with the interests of the insured. In other words, if Standard sincerely believed any probable verdict would be substantially less than $10,000, then it was not in the position of playing or gambling with the interests of the insured. As said in *Brown* v. *Guarantee Ins. Co.*, 155 Cal.App.2d 679, 696 [319 P.2d 69], ". . . the insurer has nothing to fear so long as its refusal to settle is made in good faith."

To extend liability based upon bad faith to include every case where an insurer rejects an offer of settlement below policy limits, regardless of the exercise of its honest judgment, is not necessary for the adequate protection of the insured's interest under the policy. The effect of such extension would be only to permit the injured plaintiff (through the mechanics of an assignment of a trustee in bankruptcy and without the acquiescence of the insured) to hold the insurance carrier for the full amount of any verdict or judgment and without reference to the amount of the insurance carried or purchased by the insured.

The time when the issue of bad faith of the insurer must be measured is immediately prior to, or during, the trial of the personal injury action resulting in the verdict in excess of the policy limits. Here, the personal injury action had been tried twice, each time the defendant winning the case before the jury. After the second trial, the attorney for the insurance company thought he would win again and felt the case was worth only from $2,500 to $3,500 even assuming liability; he definitely did not anticipate a verdict above $10,000. There was no *current* negotiation with plaintiff's attorney to be acted upon (plaintiff's attorney had made the original offer of settlement of $5,000 to the adjuster before the first trial and this offer had not been changed). There was nothing new as to plaintiff's physical condition to warrant or expect a verdict above the policy limits, or even to make liability "probable" as found by the trial court. The fact that the judge in each previous trial had granted a new trial for insufficiency of the evidence did not necessarily establish "probable" liability, or indicate any increased *hazard* as to the amount of a *possible* adverse verdict.

The findings of the trial court that, after the first verdict for Baurmann and the granting of a motion for new trial, defendants should have known that the chances of defeating liability were "less than half," and that after the second verdict in favor of Baurmann and the granting of a motion for new trial the chances of defeating liability "were even less," and that after the second trial a "verdict in excess of the policy limit was probable," are not supported by the evidence and are not in accordance with the law.

Much of this case is discussed by respondent's counsel as though the duty owed by the insurance company was to the claimant (plaintiff). For example, criticism is made that in trying the personal injury case (the third trial) defendants'

counsel did not put Dr. Moore (the insurance company's doctor) on the stand. Mr. Lynch believed that his testimony would only "accentuate" plaintiff's injuries and would thus help the plaintiff in that trial. There is, of course, no duty to the insured to help the plaintiff in the suit against the insured. The finding by the trial court that the failure of the defendants "to call as a witness in any of the three trials of said accident case their own doctor, Dr. Moore," was in effect an element of bad faith as to the insured is not in accordance with the law. As suggested above, the calling of Dr. Moore would only have helped the plaintiff, not the insured.

In many of the cases cited by respondent where the finding of bad faith has been upheld the action was by the insured and there was clearly established a conflict of interests as between the insurer and insured. This was the situation in *Davy* v. *Public National Ins. Co.*, 181 Cal.App.2d 387 [5 Cal. Rptr. 488], where the insured had demanded that the insurer make the settlement and where it was clear that liability might be substantially in excess of the policy limits. In that case the insurer refused to defend the action and even cancelled the policy. Where there is a clear showing of a conflict of interests the finding of bad faith is upheld upon evidence of the insurer's failure to consider the interests of the insured in acting upon the offer of settlement.

In the case at bar there was no conflict of interests between the insurer and the insured. The insured at all times took the position that he was not at fault and that he had the green light upon entering the intersection. The insured testified at each of the three trials and his testimony was substantially the same. The insurer believed the insured. In this situation where there is no real or apparent conflict of interests, it is not incumbent upon the insurer to confer with the insured regarding an offer of settlement which the insurer honestly believes to be substantially above the worth or value of the case. To put an extreme case, suppose the policy limits are $10,000, the injuries of plaintiff are minor and the chances of liability are in favor of the insured. Suppose further that plaintiff's attorney makes an offer of settlement to the insurance company adjuster to settle the case for $7,500. In this supposititious case, where after investigation the insurer believes these to be the facts and the insured is in accord as to "no liability," the insurer would have no duty to communicate the offer to the insured as it would serve no useful purpose. It is only when either the insurer or the

insured knows there is a serious case of liability and great risk of an excess verdict above policy limits that it becomes important to communicate the offers of settlement to the insured. As was said in *Ivy* v. *Pacific Automobile Ins. Co.*, 156 Cal. App.2d 652, 660 [320 P.2d 140] ". . . when liability in excess of the policy limits is involved the insured's interests became directly involved. It is then that the duty to act in good faith becomes important."

In all of the cases cited by respondent, there is some important element of bad faith present that is not found in the instant case. In some of the cases such as *Brown* v. *Guarantee Ins. Co.*, 155 Cal.App.2d 679 [319 P.2d 69], the insurance company refused to consider the offer of settlement because it was so close to the policy limits that the insurance company felt it had "nothing to lose" by rejecting the offer. (See also *Boerger* v. *American General Ins. Co.*, 257 Minn. 72 [100 N.W.2d 133], a similar case.) In the *Davy* case, (181 Cal. App.2d 387 [5 Cal.Rptr. 488]), the element of bad faith was that the insurance company did not act with reference to the offer of settlement after demand had been made by the insured and where liability well over the policy limits was clearly indicated. In the *Ivy* case (156 Cal.App.2d 652 [320 P.2d 140]) the bad faith on the part of the insurer was established by showing that the attorney for the insurance company had stipulated to a judgment against the insured over and above the policy limits. In the *Comunale* decision (50 Cal.2d 654 [328 P.2d 198]), the insurer refused to defend the insured and the insured had demanded settlement of the case at a figure below the policy limits; there was great risk of a recovery beyond the policy limits and the insurance company acted only in its own interests and did not consider the interests of the insured. These elements of bad faith which are established in the line of California cases imposing liability on the insurer are not present here and could not properly have been found in the instant case.

While some of the cases do refer to the duty of the insurer to communicate any offer of settlement to the insured, this one fact standing alone without other elements of bad faith or a conflict of interests being present does not justify a finding of bad faith and the imposition of liability upon the insurer.

In *Murach* v. *Massachusetts Bonding & Ins. Co.*, 339 Mass. 184 [158 N.E.2d 338], the suit was for $20,000, and the policy limits were $10,000. The insurer sent out the

customary excess letter as was done in the instant case. There was no serious talk of settlement. At the first trial the jury returned a verdict of $4,900. On motion for new trial the judge denied it on condition of an *additur* of $7,500. The insured was advised of this *additur* and of the possibility of an excess judgment on retrial. Prior to the second trial the plaintiff offered to settle for $9,300 which was below policy limits. A counteroffer of $7,500 was made and rejected. On the second trial, defendant's counsel admitted liability. A verdict of $29,887.07 resulted. At no time did the insured make any complaint of the manner in which the case had been handled (the same situation as in the instant case). There was no notification of the insured to the effect that the case could have been settled prior to the second trial for $9,300. The court said in *Murach* v. *Massachusetts Bonding & Ins. Co.*, 339 Mass. 184 [158 N.E.2d 338, 342] : ''Where a claim is made for an amount greater than the limits of the policy, it is obvious that the insured may be exposed to liability up to the amount of the excess. It is the duty of the insurer to disclose to its insured its adverse interest with respect to the extent of its liability under the policy. Here the insurer fulfilled its duty in this respect by its communication to the insured advising them of the possibility of a verdict in excess of the policy limit and suggesting that they retain personal counsel.

''Despite considerations argued by the plaintiffs . . . upon the facts of the present case, no more specific communication (directing attention to a possible conflict of interest) was required of the defendant. . . . Nor can the fact of the nondisclosure of the offer of settlement itself be considered in isolation.''

The court in the last mentioned case also refers to the good faith rule that the insurer must not act only to protect itself within the policy limits, saying at page 341 [158 N.E.2d] : ''To mitigate the danger, however, that the insurer will favor its own interest to the exclusion of the insured's good faith requires that it make the decision (whether to settle a claim within the limits of the policy or to try the case) as it would if no policy limit were applicable to the claim. [Citing cases.]''
It will be noted that the above was stated in a case where liability was admitted to the jury on the second trial, so that the quoted language applies exclusively to the appraisal of the damages. In applying this rule to the instant case, it is clear that the insurer, Standard, did not act with reference

to the policy limits of $10,000 but acted the same as if no policy limit was applicable to Hodges' claim.

In *Norwood* v. *Travelers Ins. Co.*, 204 Minn. 595 [284 N.W. 785, 131 A.L.R. 1496], plaintiffs were taxicab owners holding a liability insurance policy issued by defendant with a policy limit of $5,000. Plaintiffs were sued by a taxi passenger, Miss Finney, who was injured and the injured claimant recovered a verdict for $7,500. The insurance company, representing the insured defendants, took an appeal and pending the appeal received an offer of settlement from the injured party's attorney of $5,378.81, which offer was not communicated to the insured. After the appeal was lost the insurance company paid off the judgment to the extent of its policy and the plaintiff insureds brought an action against the insurance company for failure to notify plaintiff of the offer of settlement. The judgment for plaintiffs was reversed, the court saying: (284 N.W. 785, 786-787) ''It is thus seen that the court submitted to the jury as the only basis for recovery defendant's bad faith or negligence in not making and sending to plaintiffs a copy of the letter of Miss Finney's attorneys to it containing the offer of settlement. The omission to so do cannot be charged to bad faith or any intentional wrong. At most it was an error of judgment. . . .

''. . . . . . . . . . . . .

''No case has been cited where a recovery has been placed solely, as here, upon the failure to notify the insured that the injured party is willing to satisfy the larger judgment against the insured for the full liability of the insurer under the policy.''

 The criticism of the trial judges by the claims supervisor of Standard in a memorandum to the adjuster concerning the granting of new trials, while unfortunate and not justified, is not important or material on the issue of good faith of the insurer and should not be controlling on such issue. This memorandum, dated June 27, 1955, was long after Standard had made its evaluation of the case, both on liability and possible worth, and therefore it did not affect such evaluation and is not indicative of bad faith on the part of the insurer.

In view of our determination that bad faith on the part of the insurer was not established in this action it is not necessary to consider the additional question as to whether or not after the bankruptcy proceeding was closed, the case could be

reopened and any possible claim of insured disclaimed and transferred to plaintiff Hodges.

For the reasons above mentioned the judgment of the trial court in favor of plaintiff is reversed with directions to enter judgment in favor of defendants Standard and Medlen.

Burke, P. J., and Jefferson, J., concurred.

A petition for a rehearing was denied January 15, 1962, and respondent's petition for a hearing by the Supreme Court was denied February 21, 1962. Peters, J., was of the opinion that the petition should be granted.