[Civ. No. 20344. First Dist., Div. One. Apr. 24, 1963.]

GEORGIA GAIL PALMER, Plaintiff and Respondent, v. FINANCIAL INDEMNITY COMPANY, Defendant and Appellant; TRADERS & GENERAL INSURANCE COMPANY, Cross-defendant and Appellant.

422

Theodore Tamba for Defendant and Appellant.

Partridge, O'Connell, Partridge & Fall, John P. Whitney, Thomas M. Carnes and Osborne Becklund for Plaintiff and Respondent, and Cross-defendant and Appellant.

MOLINARI, J.—The plaintiff, Georgia Gail Palmer,[1] brought an action in the trial court against Financial Indemnity Company, a corporation,[2] alleging bad faith based upon a refusal to settle a personal injury and property damage insurance claim. Financial cross-complained against Palmer and Traders & General Insurance Co., a corporation,[3] the insurance carrier for Palmer, asking that any liability be prorated in accordance with the respective policies of the companies. Traders counterclaimed against Financial seeking judgment in its favor if it should be determined that Palmer was not entitled to the indemnity claimed. The judgment[4] went against Financial on its cross-complaint and in favor of Financial on Traders' counterclaim. Financial appeals from the judgment in favor of Palmer on her complaint and in favor of Traders on the cross-complaint. Traders seeks to uphold the judgment in favor of Palmer, but appeals that portion of the judgment declaring Palmer to be the real party in interest in order to protect its rights, should this court hold that Palmer is not the real party in interest.

### The Record

On November 7, 1954, Palmer was driving an automobile owned by one Frances Allen with the consent and permission of the latter. Palmer was involved in a collision with an auto-

---

[1] Hereinafter referred to as "Palmer," and sometimes as the "respondent."

[2] Hereinafter referred to as "Financial."

[3] Hereinafter referred to as "Traders."

[4] The trial court entered its judgment, and, thereafter, upon a modification of its "Findings of Fact and Conclusions of Law" following Financial's motion for new trial, the lower court entered its amended judgment. Financial has appealed from the judgment, while Traders has appealed from a portion of the judgment and from the amended judgment. Inasmuch as there can only be one judgment we shall treat both appeals as being from the "Amended Judgment."

mobile in which Chauncey and Doris McKeever were riding. Both McKeevers suffered personal injuries and there was damage to their automobile. At the time of the collision, there was in force and effect a policy of liability insurance issued by Financial and insuring Allen and others driving her automobile with her consent and permission. This policy had liability limits of $5,000 for personal injuries to each person, $10,000 for each accident, and $5,000 for property damage. At the same time, there was in force a policy of liability insurance issued by Traders, insuring Palmer and covering the latter's automobile. This policy had limits of $10,000 for personal injuries to each person, $20,000 for personal injuries in each accident, and $5,000 for property damage.

Both policies contained the standard "other insurance" provision to the effect that while the insurer agrees to cover the insured while driving a "substitute automobile," if the insured is covered under any other policy covering the automobile which he is driving, then the insurance policy issued to such driver shall be "excess insurance." There is no dispute in the present case that under the facts the coverage afforded by Financial is primary and that by Traders is secondary.[5]

On the day following the accident, Financial employed J. Roy Moneypenny to investigate the accident and undertake settlement negotiations with the McKeevers. Moneypenny contacted Mr. McKeever whose demand for settlement was $10,000 for the personal injuries to himself and his wife, and $1,000 for the property damage. Mr. McKeever testified at the trial that he gave no breakdown to Moneypenny as to the respective claims of himself and his wife, but that they were willing to give general releases for the amounts so demanded. Moneypenny, on the other hand, testified that Mr. McKeever's demand was for $5,000 for each of the spouses plus $1,000 property damage. The said demand was communicated to Financial by Moneypenny who was authorized to reject it. Moneypenny then made a counteroffer to settle all claims for $6,000 in exchange for a general release. It appears that Financial was apprised of the fact that Mrs. McKeever's injuries were serious while those of her husband were comparatively minor.

During the course of his negotiations with the McKeevers, Moneypenny had several conversations with a Mr. King who

---

[5] This was conceded by Financial at the time of oral argument.

was claims superintendent for Traders. Moneypenny testified that he advised King of the $11,000 demand, of the serious nature of Mrs. McKeever's injuries, and of the probability that Traders' coverage might be exposed under the excess coverage clause. Moneypenny also testified that he was told by Traders that it had no interest in the matter. The content of the communications between King and Moneypenny is in dispute. Whereas, Moneypenny testified that King flatly refused to contribute towards any settlement, this was denied by King who testified that he requested Moneypenny to keep him informed and to supply him with the separate demands of each claimant, but that this information was never supplied. It appears that a separate investigation was conducted by Traders whereby it became aware of the seriousness of Mrs. McKeever's injuries and of the possibility that a verdict of from $15,000 to $20,000 could result if the case went to trial. King reported to his home office and was authorized to contribute to the settlement if it were determined that Mrs. McKeever's claim was in excess of $5,000. King testified that Moneypenny told him that he felt that he could settle the claims of both the McKeevers for something between $8,000 and $9,000, that Financial would contribute $5,000 towards such settlement, and that the balance was solicited from Traders. Moneypenny offered McKeever $7,500 for a full release, but this offer was refused. Thereafter, and on February 2, 1955, Moneypenny settled the case with the McKeevers by paying $7,500 in exchange for a covenant not to levy execution against its insured, Allen. This payment was not allocated by Financial as between the respective claims of the McKeevers.

On January 20, 1955, the McKeevers filed an action for personal injuries and property damage against Palmer. The defense of the action was tendered Financial by Palmer and was rejected. Traders thereupon undertook to defend Palmer. Palmer then brought the instant action against Financial alleging bad faith in Financial's refusal to settle with the McKeevers within its own policy limits. Financial answered and cross-complained against Palmer and Traders asserting that Palmer had no claim against it because she had in fact been defended by Traders and seeking a determination that Financial was only liable for a pro rata share of the liability to the McKeevers based upon the respective limits of the two policies. Traders counterclaimed, seeking a declaration that if Palmer were not found to be the real party in

interest, then it should be held to be the real party in interest. During the pendency of the present action and prior to trial Palmer and Traders entered into an agreement designated "Agreement and Receipt for Loan." By the terms of this agreement Traders agreed to loan Palmer $8,500 for the sole and express purpose of paying the McKeevers said sum in exchange for a full release and dismissal of their action. Palmer therein agreed that she would bring an action against Financial for the recovery of said sum of $8,500, that if said sum was recovered she would pay it to Traders in repayment of said loan, but that if no recovery was obtained, then she would not be obligated to repay the loan. Palmer thereafter settled with the McKeevers for said amount in exchange for a release.

The trial court rendered its judgment in favor of Palmer and against Financial in the sum of $8,500. The court found that Financial had a duty under its policy to indemnify Palmer against the claim of the McKeevers in an amount not to exceed $5,000 for each of them for their personal injuries "unless defendant . . . in bad faith refused to settle such claims within its policy limits"; and further found that Financial did act in bad faith in undertaking to settle the claims of the McKeevers and refusing to protect Palmer by including her in a release of said claims and by intentionally excluding her from a covenant not to execute in favor of Financial and its insured, Allen, when a release of Palmer was available within the limits of Financial's policy. The trial court also found that Palmer was forced to appear and answer the complaint of the McKeevers and was exposed to liability to them; and found that had there been an exercise of good faith on the part of Financial in the defense, negotiations and settlement of said claims, the said liability would not have existed. Additional findings were made by the court below that the "Agreement and Receipt for Loan" was valid;[6] that Traders' financial interest in the action was limited to the extent therein provided; and that Palmer was the real party in interest.

### Did Financial Act in Bad Faith?

It is now well established in California that a policy of public liability insurance by which the insurer is required to defend an action on a claim covered by such policy, and

---

[6]Financial conceded the validity of this agreement at the time of oral argument.

is authorized to compromise the same within policy limits, imposes upon the insurer the obligation to exercise good faith in considering an offer of compromise within those limits. (*Davy* v. *Public Nat. Ins. Co.*, 181 Cal.App.2d 387, 394 [5 Cal.Rptr. 488]; *Hodges* v. *Standard Accident Ins. Co.*, 198 Cal.App.2d 564, 571 [18 Cal.Rptr. 17]; *Comunale* v. *Traders & General Ins. Co.*, 50 Cal.2d 654, 659-661 [328 P.2d 198]; *Ivy* v. *Pacific Auto. Ins. Co.*, 156 Cal.App.2d 652, 659 [320 P.2d 140]; *Brown* v. *Guarantee Ins. Co.*, 155 Cal.App.2d 679, 682 [319 P.2d 69].) ▮ This liability is predicated upon bad faith, and not upon negligence. (*Brown* v. *Guarantee Ins. Co.*, p. 683; *Ivy* v. *Pacific Auto. Ins. Co.*, p. 659.)

▮ Accordingly, in the application of the bad faith test the cases in this state have evolved and developed the following rules: The obligation to exercise good faith is implied in every such insurance contract (*ibid*); where an offer of settlement is the subject under consideration the obligation is imposed upon the insurer to exercise good faith in considering the interest of the insured in the settlement (*Comunale* v. *Traders & General Ins. Co.*, p. 661; *Davy* v. *Public Nat. Ins. Co.*, p. 394); an insurer guilty of bad faith in refusing to settle a claim within its policy limits breaches its contract and is liable for the entire amount of the judgment recovered against its insured, including any portion in excess of the policy limits (*Comunale* v. *Traders & General Ins. Co.*, p. 660; *Ivy* v. *Pacific Auto. Ins. Co.*, p. 659; *Brown* v. *Guarantee Ins. Co.*, p. 682; *Davy* v. *Public Nat. Ins. Co.*, p. 394); the refusal to accept a proposed settlement which, under all the circumstances, is reasonable, constitutes a failure to exercise good faith (*Comunale* v. *Traders & General Ins. Co.*, p. 661; *Davy* v. *Public Nat. Ins. Co.*, p. 394); in determining whether an offer of settlement is warranted or reasonable, the insurer, while it has the right to protect its own interests, does not have the right to sacrifice the interests of the insured (*Ivy* v. *Pacific Auto. Ins. Co.*, p. 659); the insurer must take into account and give at least as much consideration to the interests of the insured as it gives to its own interests (*Comunale* v. *Traders & General Ins. Co.*, p. 659; *Ivy* v. *Pacific Auto. Ins. Co.*, p. 660); if there is a great risk of a recovery beyond the policy limits so that the most reasonable manner of disposing of the claim is a settlement which can be made within those limits, a consideration in good faith of the insured's interest requires the insurer to settle the claim (*Comunale* v. *Traders & General Ins. Co.*, p. 659); the exercise of good faith requires that the consideration given

to the offer of settlement should be an intelligent one, should be based on a reasonable investigation, and should be made by persons reasonably qualified to make a decision respecting the risks involved (*Ivy* v. *Pacific Auto. Ins. Co.,* p. 660); the covenant to exercise good faith imposes upon the insurer the duty to communicate to the insured the results of any investigation indicating liability in excess of policy limits, and any offers of settlement which have been made, so that he may take proper steps to protect his own interest (*Ivy* v. *Pacific Auto. Ins. Co.,* p. 660); liability on the part of the insurer may not be predicated upon a failure to correctly predict the outcome of the action it is defending, nor upon mistaken judgment, but upon the failure to exercise good faith; good faith implies honesty, fair dealing and full revelation, while bad faith implies dishonesty, fraud and concealment (*Davy* v. *Public Nat. Ins. Co.,* p. 396); whether or not the insurer is guilty of bad faith is a question for the trier of fact in each case. (*Brown* v. *Guarantee Ins. Co.,* p. 689; *Hodges* v. *Standard Accident Ins. Co., supra,* p. 574.)

The *Brown* case mentions the following factors to be considered in deciding the issue of good faith: "the strength of the injured claimant's case on the issues of liability and damages; attempts by the insurer to induce the insured to contribute to a settlement; failure of the insurer to properly investigate the circumstances so as to ascertain the evidence against the insured; the insurer's rejection of advice of its own attorney or agent; failure of the insurer to inform the insured of a compromise offer; the amount of financial risk to which each party is exposed in the event of a refusal to settle; the fault of the insured in inducing the insurer's rejection of the compromise offer by misleading it as to the facts; and any other factors tending to establish or negate bad faith on the part of the insurer." (P. 689.)

██ In determining the issue of good faith we are primarily concerned with the sufficiency of the evidence to support the finding of the trial court that Financial did not act in good faith in refusing to settle the claim of the McKeevers within its policy limits and in undertaking to settle such claims without including Palmer in the covenant not to execute.

██ In this respect we are governed by the substantial evidence rule which declares that the power of this court begins and ends with a determination of whether there is substantial evidence, contradicted or uncontradicted, direct or indirect, which will support the conclusion reached by the trial judge.

(*Thayer* v. *Pacific Elec. Ry. Co.*, 55 Cal.2d 430, 438 [11 Cal. Rptr. 560, 360 P.2d 50]; *Richter* v. *Walker*, 36 Cal.2d 634, 640 [226 P.2d 593].)

Applying the foregoing general rules to the instant case, we conclude that the findings of the trial court as to bad faith are supported by the evidence. ██ On appeal it must be assumed that the trial judge drew every favorable inference reasonably deducible from the facts which will support his determination. (*Hamilton* v. *Pacific Elec. Ry. Co.*, 12 Cal.2d 598, 602 [86 P.2d 829]; *State of California* v. *Day*, 76 Cal.App.2d 536, 549 [173 P.2d 399].) Accordingly, the determination respecting the presence or absence of good faith, involving, as it does, an inquiry into motive, intent and state of mind, the conclusions concerning such matters, in most cases, are found upon inferences. (*Davy* v. *Public Nat. Ins. Co.*, p. 397.) In the instant case there is evidence that Financial knew of the seriousness of Mrs. McKeever's injuries. From the numerous and active attempts made by Financial to settle the claims, the trier of fact could reasonably infer that there was strength to the claims of the McKeevers on the issue of liability. There was also ample evidence of the amount of financial risk to which Palmer would be exposed in the event of a refusal to settle. It appears from Moneypenny's testimony that the McKeevers were willing to settle their respective personal injury claims for $5,000 each, plus $1,000 for the property damage, and to give a general release therefor. These amounts were within Financial's policy limits. The evidence discloses that while the limits of Financial's liability was $5,000 for each of the personal injury claims, it was seeking to settle its liability within its policy limits, plus a contribution for the balance of the settlement from Traders. ██ The conflict between Moneypenny's and King's testimony as to whether Traders refused to contribute to the settlement was for the trial court's resolution. Likewise, the conflict in evidence as to whether the ultimate settlement for $7,500 was broken down into $2,500 for Mr. McKeever and $5,000 for Mrs. McKeever, or whether it was $7,500 without any breakdown, was for the lower court's determination. There is also evidence that Moneypenny told King that he believed that he could settle both of the McKeever's claims for between $8,000 and $9,000, towards which settlement Financial would pay $5,000 and the balance would be solicited from Traders. After attempting to settle for a total of $7,500 for a general release, Financial settled for

$7,500 in exchange for a covenant not to execute which protected only Financial and its named assured, Allen. Neither Palmer nor her excess carrier, Traders, were consulted or advised of this settlement. Palmer, to whom Financial owed a primary liability up to its policy limits, was thus abandoned, left unprotected, and exposed to a greater liability. ▮ While Financial had a right to protect its own interests, it did not have the right to sacrifice the interests of Palmer. It was required, moreover, to give at least as much consideration to Palmer's interest as it gave to its own. Such consideration required that Financial, knowing that there was a great risk of a judgment above its policy limits, communicate to Palmer or her carrier, Traders, the fact that it proposed to settle with the McKeevers for $7,500, in exchange for a covenant not to execute which did not include Palmer, in order that the latter might have the opportunity to protect her own interests. ▮ In our opinion, the act of Financial in protecting its own and Allen's interest by obtaining the covenant not to execute, which did not include Palmer, was, under the circumstances, in and of itself sufficient evidence upon which the trial court could predicate a finding of bad faith.

*Brown, Ivy, Davy* and *Comunale* are illustrative of cases where the finding of bad faith has been upheld upon evidence of the insurer's failure to consider the interests of the insured in acting upon the offer of settlement. In *Brown,* the insurance company refused to consider the offer of settlement because it was so close to the policy limits that the insurance company felt it had "nothing to lose" by rejecting the offer. In the *Ivy* case, the bad faith on the part of the insurer was established by showing that the attorney for the insurance company had stipulated to a judgment against the insured over and above the policy limits without even communicating with the insured. In *Davy,* the element of bad faith was that the insurance company did not act with reference to the offer of settlement after demand had been made by the insured and where liability over the policy limits was clearly indicated. In the *Comunale* decision the insured advised the insurance company that the case could be settled for $4,000 and that it was highly probable the jury would return a verdict in excess of the $10,000 policy limits. The insurer refused to settle and also to defend the action. It was there held that an insurer who declines to defend and who refuses to accept a reasonable settlement within the policy limits, when there is

great risk of recovery beyond those limits, is in violation of its duty to the insured. The rationale of the foregoing cases is that where a conflict of interest as between the insurer and the insured is clearly established, a finding of bad faith is upheld upon the insurer's failure to consider the interests of the insured. In the present case there is ample evidence of such a conflict. Palmer was not the named insured in Financial's policy. Financial knew of Palmer's insurance with Traders and of the latter's secondary liability. That there was such a real or apparent conflict is demonstrated by the evidence that Financial was striving to get a contribution from Traders to a settlement even within Financial's policy limits. The absence of such a conflict of interest is the distinguishing feature in *Hodges* v. *Standard Accident Ins. Co.*, *supra*, 198 Cal.App.2d 564, relied upon by Financial. There the company's own named insured at all times took the position that he was not at fault and gave testimony at three trials that he had the green light upon entering an intersection. The insurer believed the insured. The court in *Hodges* found that there was no bad faith even though the jury returned a verdict in excess of the policy limits, and although the case could have been settled for a sum below such limits, where the insurance company honestly believed and had cause to believe that any probable liability would be less than its policy limits.

 Some suggestion is made by Financial that while it had the primary coverage over the accident, it did not owe Palmer the duty within the contemplation of the foregoing cases which have upheld the presence of bad faith. This contention is answered by *Ivy*, where it was held that because the primary carrier has the duty to defend and the right to control the defense of an action against its insured and a driver of the insured's car, it owes the high duty of good faith to both. In *Ivy*, the defendant insurer, considering itself the primary carrier, undertook to defend the action against its named insured and Ivy, who was also covered by a policy of his own. The said defendant's policy covered up to $50,000. Without consulting Ivy, defendant's attorney stipulated to a judgment against Ivy. The defendant insurer satisfied the judgment to the extent of $25,000 upon an agreement that the injured party would sue Ivy's insurer for the balance. The appellate court reversed the trial court and held that Ivy was damaged by the bad faith of the insurer in allowing the judgment to go against Ivy above its policy limits without

consulting him. The reviewing court there held that recovery was not precluded because Ivy was covered by a policy of his own. We see a strong analogy between *Ivy* and the situation presented by the case at bench.

■ It is urged by Financial that it was error for the trial court to exclude evidence of Traders' own evaluation of the respective claims of the McKeevers. The court below was correct in its rulings because the duty under consideration was that owed by Financial to Palmer, and not that owed by Traders to Palmer. The issue of bad faith was predicated upon a breach of that duty by Financial.

### Is Palmer the Real Party in Interest?

Financial contends that Palmer is merely a nominal party, and that Traders is the real party in interest. Accordingly, the contention is made that Palmer is bringing the action on behalf of Traders, as subrogee, because any recovery herein will redound solely to the benefit of Traders. It is urged, therefore, that the trial court by its findings permitted Traders, an "unconscionable subrogee, with unclean hands in the transaction, to gain through its own wrong, contrary to equity." The alleged unconscionable conduct is predicated upon the claim that Traders, as the real party in interest, knew that its policy was exposed but nevertheless refused to join with Financial in settling the personal injury claims of the McKeevers.

The assertion that Traders is the real party in interest is predicated upon two grounds, to wit: (1) that the pretrial order declared that Palmer was merely a nominal party bringing the action on behalf of Traders, which declaration, in the absence of an amendment to the pretrial order, was binding on the trial court; and (2) that the effect of the "Agreement and Receipt for Loan" executed by Palmer and Traders was to make Traders the real party in interest in view of the provision therein that Palmer is obligated to repay Traders if she recovers in the instant action.

■ The "Pre-trial Conference Order" contains the following statement under the heading "Nature of the Case": "The plaintiff, Georgia Gail Palmer, is the nominal plaintiff but actually she brings the action for the benefit of Traders and General Insurance Company against Financial Indemnity Company." The pretrial order, however, contains this statement following the foregoing language: "The issues in the case are the following: . . . (2) Is plaintiff the real party in interest? If not, may cross-defendant Traders and General

recover such amounts as plaintiff might otherwise recover?''
While there is an apparent inconsistency between the two state-
ments, we are of the opinion that the latter statement is con-
trolling, particularly when the case was tried upon the theory
that this issue was before the trial court and findings were
made thereon. The purpose of the pretrial procedure is
to place the case in focus so that defined and precise issues
may be resolved as quickly as possible. (*Spence* v. *State of
California,* 198 Cal.App.2d 332, 338 [18 Cal.Rptr. 302]; *Fitz-
simmons* v. *Jones,* 179 Cal.App.2d 5, 8 [3 Cal.Rptr. 373].)
 Such order controls the subsequent course of the trial
and supersedes the pleadings where they are inconsistent.
(*Spence* v. *State of California,* pp. 337-338; *County of Kings*
v. *Scott,* 190 Cal.App.2d 218, 225 [11 Cal.Rptr. 893]; Cal.
Rules of Court, rule 216.*) While a subsequent
course of an action may also be controlled by agreements
made at a pretrial conference so long as they remain un-
modified (*County of Kings* v. *Scott,* p. 225), we are satisfied
that the statement that Palmer was a nominal plaintiff did
not amount to acquiescence that Palmer was not the real party
in interest in view of the express statement that it was an issue
before the court. In arriving at this conclusion we
are persuaded that the important function of the pretrial order
is to define issues. (See Cal. Rules of Court, rule 214.)†
 Moreover, we are satisfied that by litigating the issue
at the trial without objection or moving for a modification,
Financial waived whatever right it had to complain that this
issue was not before the court. (*Gordon* v. *Reynolds,* 187
Cal.App.2d 472, 475 [10 Cal.Rptr. 73].)

 It is also urged by Financial that Palmer was re-
moved as the real party in interest by virtue of the execution
of the ''Agreement and Receipt for Loan.'' The ''loan'' there
mentioned, contends Financial, was not truly a loan, but a
payment under Traders policy insuring Palmer. These con-
tentions are answered by *Gillies* v. *Michigan Millers etc. Ins.
Co.,* 98 Cal.App.2d 743 [221 P.2d 272], where it was held
that a ''loan receipt agreement'' whereby, after loss, an insur-
ance company reimburses the insured for the amount of the
loss, with provision for repayment of the loan contingent
upon recovery in an action in the insured's name for the bene-
fit of the insurer against a third party, is not such a settle-
ment or payment as will relieve the third party from liabil-

*Formerly Rules for the Superior Courts, rule 8.6.

†Formerly Rules for the Superior Courts, rule 8.8,

ity. (See also *Heuer* v. *Truck Ins. Exch.*, 51 Cal.App.2d 497, 504 [125 P.2d 90].)

Financial relies upon *American Alliance Ins. Co.* v. *Capital Nat. Bank*, 75 Cal.App.2d 787 [171 P.2d 449]. This case is readily distinguishable from the case at bench. *American Alliance Ins. Co.* involved a situation where the plaintiff was insured under an indemnity policy insuring against the dishonest conduct of its agent. Upon demand the surety company paid plaintiff the amount of its losses. The surety company took from the assured a so-called "loan receipt" which recited that the assured had received a specified sum as a loan to be repaid only from such recovery as might be had from other parties. The plaintiff then brought a suit against the defendant bank for wrongfully paying several forged drafts presented by the plaintiff's said agent. It was there held that the plaintiff could not maintain an action on its own behalf because it had been fully compensated, and therefore could not receive double pay for its losses; nor could it maintain the action in behalf of the surety company, since the latter was not entitled to be subrogated to the rights of the plaintiff because the doctrine of subrogation is not applicable in favor of a surety on a fidelity bond as against an innocent third person (the bank) but only against the wrongdoer (the agent) or against persons who participated in the wrongful act of the wrongdoer. The appellate court was of the opinion that the receipt of the money from the surety company was not a loan but a payment of the surety company's bonded liability in discharge of its indebtedness. The rationale of the holding is that the obligation of the surety company was *primary* and contractual, independent of the separate liability of the wrongdoer, and a liability to the insured which was *absolute* when the loss occurred for which the insured was entitled to prompt payment without resort to a loan. ▮ In the present case the liability of Traders was not absolute when the loss occurred. It was not only a secondary liability, but one contingent upon whether or not Financial was guilty of bad faith. If Financial breached its primary liability because of bad faith, Traders would have no liability to its insured because Financial would be liable for all the detriment proximately caused thereby without regard to its policy limits. (*Comunale* v. *Traders & General Ins. Co.*, *supra*, 50 Cal.2d 654, 661; Civ. Code, § 3300; and see *Walters* v. *American Ins. Co.*, 185 Cal.App.2d 776, 785 [8 Cal.Rptr. 665].) On the other hand, if it was determined

that Financial was not guilty of bad faith, then Traders would be liable for the loss in excess of Financial's policy limits. (*American Automobile Ins. Co.* v. *Republic Indemnity Co.,* 52 Cal.2d 507, 512-513 [341 P.2d 675].) Traders' liability being uncertain, it was, therefore, not absolute. Its liability was dependent upon the fulfillment by Financial of its primary duty to Palmer. Where an insurer's liability to its insured is not absolute, the insurance company has a right to exact such terms as it chooses as a condition of payment. (*Heuer* v. *Truck Ins. Exch., supra,* 51 Cal.App.2d 497, 504; *Kalle & Co., Inc.* v. *Morton,* 156 App.Div 522, 524 [141 N.Y.S. 374].) Accordingly, the courts have held that in the exactment of such terms insurance companies may properly enter into loan transactions such as the one in the instant case. (*Gillies* v. *Michigan Millers etc. Ins. Co., supra,* 98 Cal.App.2d 743; *Heuer* v. *Truck Ins. Exch., supra;* *Yczek* v. *Delaware, I. & W. R. Co.,* 176 Misc. 553 [28 N.Y.S.2d 35]; *Kalle & Co., Inc.* v. *Morton, supra.*)

Financial's claim of unclean hands on the part of Traders is without merit. It was first raised by Financial in its brief on appeal. The issue was not raised in the answer and cross-complaint; nor does it appear as an issue in the "Pre-trial Conference Order." ██ The defense of "unclean hands" is not available on appeal, unless it has been pleaded or called to the attention of the court. (*Watson* v. *Poore,* 18 Cal. 2d 302, 311-312 [115 P.2d 478].) ██ Moreover, no special finding thereon was requested by Financial. The absence of such a request would warrant the inference that if such issue were before the court the finding thereon was in favor of the prevailing party. (See Code Civ. Proc., § 634.) However, as we have pointed out above, Palmer is the real party in interest and the person to whom Financial owed the obligation of good faith. No assertion of unconscionable or improper conduct on the part of Palmer is made. ██ Furthermore, Financial concedes that it is the primary insurer. Accordingly, it was required to bear the whole loss within the limits of its policy, i.e., up to $5,000 for each of the McKeevers. (*American Automobile Ins. Co.* v. *Republic Indemnity Co., supra,* 52 Cal.2d 507.) When it did so its obligation as a primary carrier would be discharged. It had no right to insist on any contribution from Traders for a settlement within the limits of its policy. Moreover, as we have hereinabove indicated, there was a conflict in the evidence as to

whether any request or demand at all was made to Traders for contribution.

The judgment is affirmed. Palmer and Traders shall recover costs on appeal.

Bray, P. J., and Sullivan, J., concurred.