[Civ. No. 21912. First Dist., Div. One. May 13, 1966.]

THE TRAVELERS INDEMNITY COMPANY, Plaintiff and Appellant, v. COLONIAL INSURANCE COMPANY, Defendant and Respondent; TRANSPORT INDEMNITY COMPANY, Defendant and Appellant.

Weinmann, Rode, Burnhill & Moffitt and Cyril Viadro for Plaintiff and Appellant.

Clark, Heafey & Martin and Gerald P. Martin for Defendant and Appellant.

Low, Ball & Norton and Louis E. McDonough for Defendant and Respondent.

SULLIVAN, P. J.—We are presented with two appeals[1] in an action for declaratory relief brought to determine the respective rights and obligations of three insurance carriers in respect to a claim for damages for personal injuries.

The matter was submitted below upon an agreed statement of facts with attached exhibits containing copies of the pertinent insurance policies. This record discloses the following undisputed facts: On September 24, 1957, David O. Ross doing business as Ross Demolition Company was engaged in wrecking a building in Oakland. On or before said date Ross rented from Converse Trucking Service (Converse) a motor driven, self-propelled forklift truck to use in the demolition work. This forklift was used on terminal dock facilities and exclusively on private property and was not registered with the California Motor Vehicle Department.

On the above date David Ross engaged the services of Ralph Ross, a trucker, to haul steel beams from the site of the demolition work. At the time Jasper Payne, an employee of David Ross, was operating the forklift and lifting steel beams onto a truck owned by Ralph Ross. The latter was standing on the truck and directing the loading. This operation was conducted on private property. While it was in progress, Payne negligently operated the forklift, causing one or more of the steel beams to fall on the truck, striking Ralph Ross and knocking him to the ground, as a result of which he sustained personal injuries. On May 21, 1958, Ralph Ross commenced an action for damages for personal injuries, naming as defendants therein David Ross and Payne.

At the time of the above accident the following insurance policies were in full force and effect: (1) A comprehensive liability policy issued by Travelers to David Ross; (2) a com-

---

[1]Said appeals have been taken by Travelers Indemnity Company (Travelers) and Transport Indemnity Company (Transport). While Transport appeals from the judgment ''and from the whole of said judgment,'' Travelers appeals ''from that part of the judgment . . . which denies it recovery against'' Colonial Insurance Company (Colonial).

mercial vehicle policy issued by Colonial to Ralph Ross covering the latter's truck; and (3) an occupational comprehensive liability and comprehensive automobile damage policy issued by Transport to Converse.

Colonial and Transport were notified of the accident and each of them was tendered by David Ross the defense of the above personal injury action, which tenders both rejected. Travelers, David Ross' carrier, thereafter undertook such defense and eventually compromised the action for $19,000, incurring costs and attorneys' fees in the course thereof.[2]

On February 13, 1962, Travelers commenced the instant action seeking a judgment declaring that the policies issued by Colonial and Transport covered the liability of David Ross and the latter's employee, Payne, to Ralph Ross and requiring said defendants to indemnify Travelers for the amounts paid by it for the settlement of the action and for attorneys' fees and costs. It was plaintiff's position that at the time of the accident David Ross and Payne were using both the truck (insured by Colonial) and the forklift (insured by Transport) with the permission of the insured named in the respective policies and that defendants' policies were primary while plaintiff's policy was merely excess.

The court made findings of fact based on the agreed statement of the parties and additional data in respect to the provisions of the policies submitted to it, concluding therefrom: that the liability of David Ross to Ralph Ross was covered by both Travelers' and Transport's policies but not by Colonial's policy; that Transport's policy afforded David Ross primary coverage to the extent of $15,000 and Travelers' policy excess coverage to the extent of $4,000; that the attorneys' fees and costs should be prorated between Travelers and Transport; that Travelers was entitled to judgment against Transport for $16,295.08 and costs; and that Travelers should recover nothing against Colonial.[3] Judgment was entered accordingly. These appeals followed.

*Colonial's policy did not provide coverage against the loss.*

The trial court's holding that Colonial was not liable under its policy rested on two bases: (1) That the policy excluded

---

[2]Travelers incurred costs in the sum of $385.83 and attorneys' fees in the sum of $1,255, the parties agreeing that the amounts of the settlement, costs and attorneys' fees were reasonable.

[3]Costs and attorneys' fees were prorated in the same proportion as the loss sustained, Transport bearing 15/19 and Travelers' 4/19 of the total amounts. Travelers, therefore, received judgment for $15,000 plus 15/19 of $1,640.43 or $1,295.08, making a total of $16,295.08.

from coverage claims for bodily injury made by its named insured Ralph Ross and therefore precluded recovery by anyone standing in his shoes as subrogee; and (2) that notwithstanding the broad meaning of the term "use" which has been held to include "loading and unloading," since the truck owned and operated by Ralph Ross as an independent contractor was not under the control of David Ross or any of his employees, David Ross and Payne were not "using" the truck so as to become additional insureds under Colonial's policy in respect to damages sustained by Ralph Ross.[4] Challenging the validity of both of the above grounds, Travelers argues that Colonial's policy *did* cover the liability of David Ross and Payne for the accident. Transport takes the qualified position that Colonial's policy provides coverage "if the policy exclusion is not valid."

We observe in passing that Colonial's policy contained no clause extending its coverage to persons using the truck with the permission of the named insured. Indeed under its "exclusions" the policy did not apply under any of its coverages to loss arising while the truck was "being driven or operated by any person other than the insured or his paid employee." At the time of the accident section 415 subdivision (b)(2) of the Vehicle Code[5] (now § 16451) provided that an owner's policy of liability insurance "Shall insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of said assured, against loss from the liability imposed by law for damages arising out of ownership, maintenance, or use of such motor vehicle or motor vehicles. . . ." It is now well established "that for an insurer to issue a policy of insurance which does not cover an accident which occurs when a person, other than the insured, is driving with the permission and consent of the insured is a violation of the public policy of this state as set forth in sections 402 and 415 of the Vehicle Code. . . .

---

[4]In his memorandum decision the trial judge said: "Here, the truck was not under the control of David Ross or any of his employees. It was under the control of its owner, an independent contractor. No negligence is ascribed to the owner, Ralph Ross. It would appear to be extending the doctrine of 'use' beyond even its now expanded bounds to hold that David Ross was 'using' the truck owned and operated by Ralph Ross as an independent contractor so as to include the latter's policy of insurance as 'additional insurance' for David Ross covering damages sustained by Ralph Ross."

[5]Unless otherwise indicated all section references are to the Vehicle Code.

"Inasmuch as sections 402 and 415 of the Vehicle Code set forth the public policy of this state such laws must be considered a part of every policy of liability insurance even though the policy itself does not specifically make such laws a part thereof." (*Wildman* v. *Government Employees' Ins. Co.* (1957) 48 Cal.2d 31, 39-40 [307 P.2d 359]; *Interinsurance Exchange* v. *Ohio Cas. Ins. Co.* (1962) 58 Cal.2d 142, 150 [23 Cal.Rptr. 592, 373 P.2d 640]; *Bonfils* v. *Pacific Auto. Ins. Co.* (1958) 165 Cal.App.2d 152, 156-158 [331 P.2d 766]; *American Auto. Ins. Co.* v. *Transport Indem. Co.* (1962) 200 Cal.App.2d 543, 552 [19 Cal.Rptr. 558]; *Campidonica* v. *Transport Indemnity Co.* (1963) 217 Cal.App.2d 403, 406 [31 Cal.Rptr. 735]; *Bohrn* v. *State Farm etc. Ins. Co.* (1964) 226 Cal.App. 2d 497, 502 [38 Cal.Rptr. 77].) Any provision in a policy purporting to exclude certain classes of permissive users from coverage is contrary to this public policy and therefore void. (*Interinsurance Exchange* v. *Ohio Cas. Ins. Co., supra*; *Bonfils* v. *Pacific Auto. Ins. Co.., supra*, 165 Cal.App.2d 152, 156; *Bohrn* v. *State Farm etc. Ins. Co., supra*, 226 Cal App.2d 497, 503.) Under these authorities the foregoing exclusionary provision of the policy is void. In any event, paragraph 28 of the "General Conditions" of the policy provided: "Terms of this policy which are in conflict with the statutes of the state wherein this policy is issued are hereby amended to conform to such statutes." It is therefore concluded that Colonial's policy extended coverage to permissive users of the truck.

This conclusion opens the way to an inquiry as to whether the loading of the truck by David Ross' employee, Payne, constituted a "use" of the truck within such extended coverage of Colonial's policy. It will be recalled that the trial court, as one of its two grounds for holding that the policy did not provide coverage, concluded that the loading operation was not a "use" of the truck. (See fn. 4, *ante.*) Although we disagree with such conclusion,[6] we need not reach this ques-

---

[6]It has been held that a policy insuring persons "using" a truck with the permission of the named insured without defining the term "using" extended coverage to the loading and unloading of such truck as a part of its normal use. (*General Pump Service, Inc.* v. *Travelers Ins. Co.* (1965) 238 Cal.App.2d 81, 86-87 [47 Cal.Rptr. 533]; *Campidonica* v. *Transport Indem. Co., supra*, 217 Cal.App.2d 403, 406-407; see *Continental Cas. Co.* v. *Zurich Ins. Co.* (1961) 57 Cal.2d 27, 33 [17 Cal. Rptr. 12, 366 P.2d 455]; *American Auto. Ins. Co.* v. *Transport Indem. Co., supra*, 200 Cal.App.2d 543, 553.) It would seem logical that the same conclusion should be reached where, as here, the statute requiring coverage of permissive use is considered a part of the policy under the principles announced in *Wildman.*

tion since we have concluded that the trial court's determination as to nonliability under the policy can be upheld on the other basis indicated by it.

■ Turning to this point, we first set forth the following pertinent provisions of Colonial's policy: "INSURING AGREEMENTS To Indemnify the Insured named in Item I of the declarations and herein called the insured. COVERAGE A & B Against Loss from Liability Imposed by Law Upon the Insured arising or resulting from claims upon the insured for actual damages to persons accidentally receiving bodily injuries . . . by reason of the ownership, maintenance or use of any of the automobiles or motor vehicles as enumerated and described . . . if such claims are made on account of (1) COVERAGE A—Bodily Injury or Death suffered by any person or persons, *other than the insured or his employees,* as the result of an accident occurring while this policy is in force; . . ." (Italics added.)

Did the italicized portion of the above provision effectively exclude from coverage under Colonial's policy a claim made by Ralph Ross, its named insured (Insured), as distinguished for example from a claim made by a third person? We believe it did. Section 415 subdivision (e) (now § 16454) as in effect at the time of the accident provided: "Any liability policy issued hereunder *need not cover any liability for injury to the assured* or any liability of the assured assumed by or imposed upon said assured under any workmen's compensation law . . ." (Italics added.) Thus the above exclusion from coverage was not violative of any public policy; indeed it was expressly sanctioned by the very section which required coverage for permissive users. Absent any statute or public policy prohibiting them, provisions of an automobile liability policy excluding from coverage liability for bodily injury or death of a named insured have been held valid and effective and have been enforced according to their terms. (7 Appleman, Insurance Law and Practice (1942) § 4409, p. 377; 12 Couch on Insurance 2d (1964) §§ 45:485, 45:486, pp. 474-476, see annotation in 50 A.L.R.2d 131; see also *Travelers Ins. Co.* v. *Norwich Union Fire Ins. Soc.* (1963) 221 Cal.App.2d 150, 153 [34 Cal.Rptr. 406]; 28 Cal.Jur.2d, Insurance, § 507, p. 254.)[7]

[7]No reported California case has expressly ruled on the point although *Norwich, supra,* contains apposite dictum. In that case Division Three of this court held that the insurance company was obligated to afford a defense in an action for damages for personal injuries brought by its named insured against third parties who were additional insureds where the policy covered the named insured and any other person using his

We reject as unmeritorious Travelers' arguments that the exclusionary provision is without effect. These are advanced in the alternative from the factual basis that Ralph Ross is the Insured named in the declarations of Colonial's policy and that, as already noted in the policy's insuring agreements, Colonial agrees to indemnify the Insured named in the declarations "and herein called the insured" against the loss thereafter indicated. Travelers argues that the policy repeatedly distinguishes between "named insured" and "insured" and that whether the terms are considered as interchangeable or totally distinct in either event the exclusionary provision does not apply. The argument may be summarized thusly: First, if the policy does distinguish between "named insured" and "insured," the exclusion is inoperative because had Colonial intended to exclude coverage for Ralph Ross' injuries it should have used the language "other than the *named* insured" (italics added) and failing to do so intended to exclude coverage only for injuries of "insured" (e.g., David Ross and Payne). Secondly, if the two terms are used interchangeably, then Colonial intended its policy to cover Ralph Ross' liability in the first place, that the exclusion was operative only where Ralph was liable and that it was not intended to apply where an additional insured "might come into the picture by operation of law." The arguments are completely specious and lead to absurd results. An examination of the insuring agreement set forth above satisfies us that Ralph was always in fact the named insured under the policy and that the italicized language of exclusion refers to *his* claims for injuries.

We are of the opinion that the policy excluded from coverage claims by its named insured Ralph Ross. In view of this conclusion we need not discuss the issue raised by Travelers as to whether Colonial's coverage was primary or excess.

automobile with his permission against liability for bodily injury "sustained by *any* person." (Italics added.) (221 Cal.App.2d at p. 151.) The court said: "The decisions relied upon by Norwich [citations] are not in point. They construed policies couched in the language of a Massachusetts statute providing for indemnity of named insured and additional insured against 'liability to pay damages to others.' This language was understandably held to limit coverage to claims by others than the named or additional insured. *No comparable exclusion is stated in the policy before us, although its availability has long since been noted* (7 Appleman, Ins. Law & Practice, 377). We conclude that this policy, fairly construed, requires Norwich to indemnify its additional insured against the claim of the named insured." (Italics added.) (221 Cal.App.2d at p. 153.)

*Transport's policy provided coverage for
the use of the forklift.*

As Transport points out, since its policy did not contain an omnibus clause extending coverage to permissive users, any extension of coverage to Payne and David Ross as permissive users of the forklift must necessarily be predicated on section 415 as made a part of the policy under the principles announced in *Wildman* v. *Government Employees' Ins. Co., supra,* 48 Cal.2d 31 and cases following that decision. Transport contends however that the forklift owned by Converse and rented to David Ross was not a "motor vehicle" within the provisions of section 415 so that Payne and David Ross did not become additional insureds under the policy. ██ Paying lip service to former sections 31 and 32 (now §§ 670 and 415), Transport argues that a forklift is neither designed nor used to haul persons or property on a public highway; that the forklift here involved was not so used; and that the Vehicle Code provisions[8] exempting forklifts from registration show a legislative intention not to include them in the definition of "motor vehicle." We disagree.

Former section 31 provided: "A 'vehicle' is a device in, upon or by which any person or property is *or may be* propelled, moved or drawn upon a highway, excepting a device moved by human power or used exclusively upon stationary rails or tracks." (Italics added.) Former section 32 provided: "A 'motor vehicle' is a vehicle which is self-propelled." It is obvious that the forklift in the instant case falls within such sections. It was motor-driven and self-propelled. It was also a device by which any person or property *might* have been "propelled, moved or drawn upon a highway." Such seems all that is necessary to make it a motor vehicle.

In *Lambert* v. *Southern Counties Gas Co.* (1959) 52 Cal.2d 347 [340 P.2d 608], the contention was made that a bulldozer was not a motor vehicle within the terms of former section 402 so as to permit an imputation of negligence. Rejecting this contention the court said: "In *Behling* v. *County of Los Angeles,* 139 Cal.App.2d 684 [294 P.2d 534], an 'Allis-Chalmers tractor, crawler type with bulldozer,' was held as a

---

[8]Former section 142.6 (now § 4013) provided: "The registration provisions of this chapter shall not apply to any fork-lift truck which is designed primarily for loading and unloading and for stacking materials and is operated upon a highway only for the purpose of transporting products or material across a highway in the loading, unloading or stacking process, and is in no event operated along a highway for a greater distance than one-quarter mile."

matter of law to be a 'motor vehicle' within the meaning of sections 31 and 32 of the Vehicle Code. Likewise here, plaintiffs' bulldozer as designated in their amended complaint constitutes a 'device' which 'may be propelled, moved, or drawn upon a highway' (Veh. Code, § 31) and concededly is 'self-propelled' (Veh. Code, § 32) so as to be a 'motor vehicle' within the terms of the Vehicle Code. (*Yarrow* v. *State* * (Cal. App.) 336 P.2d 1030.) Plaintiffs argue that their bulldozer was being used on private property rather than in the construction of a public roadway at the time of the accident. (Cf. *Behling* v. *County of Los Angeles, supra.*) But that fact does not affect the basic definition of a 'motor vehicle' for purposes of application of the Vehicle Code. (*People* v. *Pakchoian,* 114 Cal.App.2d Supp. 831, 832-833 [250 P.2d 767].) Nor does it aid plaintiffs to assert certain claimed facts in their opening brief in an attempt to show that their bulldozer exceeds the limitations regarding weight, size, and construction of equipment that may 'lawfully' be moved on the highway. (E.g., Veh. Code, §§ 694, subd. (a), 705, subd. (a).) For purposes of classification as a 'motor vehicle' under the broad definition of the Vehicle Code, it is not required that the device be one that may *legally* be 'self-propelled upon a highway.' (Veh. Code, §§ 31, 32.) The Vehicle Code comprehends those vehicles which may require special safeguard or special permit in order to be legally operated on the highways (Veh. Code, §§ 710, 710.5) as well as those vehicles which comply with existing statutory limitations. Plaintiffs' bulldozer therefore appears to be a 'motor vehicle' as a matter of law, and the provisions of the Vehicle Code pertaining to the negligent operation thereof apply.'' (52 Cal.2d at p. 351.)

In *Colby* v. *Liberty Mutual Ins. Co.* (1963) 220 Cal.App.2d 38 [33 Cal.Rptr. 538] it was held that under a policy issued by Transport Indemnity Company to the owners of a mobile crane, coverage was extended to the crane operator as an additional insured pursuant to former section 415 since the crane was a motor vehicle within the meaning of that section. The court said: ''It is clear from the evidence that the mobile crane was a self-propelled vehicle capable of moving under its own power from one job to another. Hence it was a motor

---

* Reporter's Note: The District Court of Appeal granted a rehearing in *Yarrow* on April 17, 1959, and filed an opinion on July 23, 1959 (343 P.2d 359). The Supreme Court granted a hearing on September 16, 1959, and its opinion, filed January 22, 1960, is reported in 53 Cal.2d 427 [2 Cal.Rptr. 137, 348 P.2d 687].

vehicle. (Veh. Code, § 415.) While it was being used as a crane at the time of the accident, it was in fact being propelled by means of its motor over a limited portion of the premises in the course of such use. . . . Consequently, under the reasoning of *Wildman* v. *Government Employees' Ins. Co.*, 48 Cal.2d 31 [307 P.2d 359], and *Interinsurance Exchange* v. *Ohio Cas. Ins. Co.*, 58 Cal.2d 142 [23 Cal.Rptr. 592, 373 P.2d 640], as a matter of law the automobile liability policy issued by Transport to Progressive covered the crane operator in his use of the mobile crane under the circumstances of the present case." (220 Cal.App.2d at pp. 44-45.) See also *Pacific Indemnity Co.* v. *Liberty Mutual Ins. Co.* (1966) 239 Cal.App.2d 346, 348, footnote 1 [48 Cal.Rptr. 667], holding that an employee driver of a forklift rented by his employer was an additional insured under his employer's liability policy because he was a "person . . . using a . . . hired automobile."

Finally we are not convinced that exemption of the forklift from registration establishes that it was not a motor vehicle. On the contrary we are more persuaded by this argument to the conclusion that it *was* a motor vehicle under sections 31 and 32, thereafter falling into the special category of motor vehicles exempt from registration. ■ As Transport itself observes, not all motor vehicles are required to be registered (see former §§ 142, 142.1, 142.6) and as Travelers points out to us, the mere fact that a motor vehicle is thus exempt does not make it any the less a motor vehicle.[9] Therefore removal of a motor vehicle from the operation of Vehicle Code sections requiring registration does not signify its removal from all other applicable sections. (See *Behling* v. *County of Los Angeles* (1956) 139 Cal.App.2d 684, 688 [294 P.2d 534].) Had the Legislature intended to exclude forklift trucks from section 415 (§ 16451) it could easily have said so. ■ We conclude that the forklift here involved was a motor vehicle and that Transport's policy extended coverage to Payne and David Ross as permissive users thereof. We proceed to determine whether such coverage was primary or excess.

*Transport's policy provides primary coverage with applicable limits of $15,000.*

Preliminarily we set forth the respective positions of Travelers and Transport in respect to their coverage of the use of

---

[9]See 2 Ops. Cal. Atty. Gen. 331, 332 holding that a "nurse rig" is "obviously" a motor vehicle within sections 31 and 32 but under certain circumstances may be exempt from registration.

the forklift. Travelers concedes that its policy covered David Ross' vicarious liability for the accident but asserts that such insurance was excess over insurance provided by Transport's policy.[10] Transport contends that if any insurance was provided by its policy against the loss in question, it was only that provided by the basic policy with applicable limits of $10,000; that such insurance, if any, was excess and not primary; and that if Travelers' coverage was also excess, the two policies must be prorated. As we discuss in detail *infra*, Transport additionally contends that Travelers' coverage was primary and not excess.

This brings us to a more detailed consideration of Transport's policy and the arguments pertinent thereto. The basic policy issued by Transport to Converse (the forklift owner) provided coverage with limits of $10,000. It contained an "other insurance" clause providing: "If there is other insurance against an occurrence covered by this policy, this insurance shall be deemed excess insurance . . ." The record indicates that there was attached to Transport's policy and in effect at the time of the accident an endorsement prescribed by the California Public Utilities Commission (P.U.C.) with applicable limits of $15,000 for bodily injuries to or death of one person.[11]

---

[10]Paragraph 14 of the conditions of Travelers' policy provided: "Other Insurance. If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance under this policy with respect to loss arising out of the maintenance or use of any hired automobile insured on a cost of hire basis or the use of any non-owned automobile shall be excess insurance over any other valid and collectible insurance."

[11]The P.U.C. endorsement was not included in the original record brought before us. Counsel for Transport have now furnished the court with a copy of the original endorsement filed with the Public Utilities Commission on February 1, 1955, and the parties apparently agree that this is the endorsement under discussion in their briefs. On our own motion, therefore, we have augmented the record to include such copy of the endorsement.

The endorsement was entitled: "Standard Form of Endorsement Prescribed by the Public Utilities Commission of the State of California to be attached to and made a part of all policies insuring motor vehicles subject to regulation by the Public Utilities Commission of the State of California (Form P & F 566)." In pertinent part it provided: "The policy to which this endorsement is attached is an Automobile Bodily Injury Liability and Property Damage Liability policy and is hereby amended to assure compliance by the insured, as a motor carrier of property, with the Public Utilities Code and the pertinent rules and regulations of the Public Utilities Commission of the State of California.

As previously stated, the trial court held that Transport's policy afforded David Ross primary coverage to the extent of $15,000. Transport contends that this holding was erroneous, resting its claim on the following two theories: *First,* that the forklift was not a motor vehicle for which a certificate of public convenience and necessity or a permit was required to be obtained by the owner or operator; that at the time of the accident it was not operated in the business of Converse as a motor carrier for hire; and that the mere fact that a P.U.C. endorsement was attached to the policy does not establish that Converse had to carry such insurance for the operation of the forklift under the present circumstances. *Second,* that the mere fact that a P.U.C. endorsement was attached to the policy does not automatically make the coverage primary.

■ As to the first point, the record (see fn. 11, *ante*) establishes that the P.U.C. standard form of endorsement was attached to Transport's policy and that such policy was amended thereby as stated in the endorsement. The parties agree that said policy as thus amended was in effect at the time of the accident. Presumably Converse was at that time the holder of a P.U.C. certificate or permit as a motor carrier. The record also establishes, and no contrary claim is made by Transport, that the forklift falls within the general protection of the basic policy. Nothing in the record indicates its exclusion from the policy *as amended* by the P.U.C. endorsement, either simultaneously with the endorsement and pursuant to its terms, or otherwise. Indeed, the fact that the forklift was used on terminal dock facilities supports the inference of its inclusion in Transport's coverage of Converse's motor carrier operations. Transport's argument that the forklift was not such a motor vehicle as required a P.U.C. certificate or permit

---

"In consideration of the premium stated in the policy to which this endorsement is attached, the Company hereby agrees to pay, within the limits of liability hereinafter provided, any final judgment rendered against the insured for bodily injury to or death of any person, . . . resulting from the operation, maintenance, or use of motor vehicles for which a certificate of public convenience and necessity or permit is required *or has been issued to the insured by the Public Utilities Commission* of the State of California, *regardless of whether such motor vehicles are specifically described in the policy or not.*

"Within the limits of liability hereinafter provided it is further understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, or any other endorsement thereon or violation thereof, or of this endorsement, by the insured, shall relieve the Company from liability hereunder or from the payment of any such final judgment, irrespective of the financial responsibility or lack thereof . . ." (Italics added.)

is of no avail, since by its terms the endorsement applied in respect to the operation, maintenance or use of motor vehicles for which a certificate or permit "has been issued to the insured by the Public Utilities Commission of the State of California, regardless of whether such motor vehicles are specifically described in the policy or not." (See fn. 11, *ante.*) Nowhere in the record does it appear that the forklift was *not* one of the vehicles for which Converse was issued a certificate or permit. Indeed, as the above language makes explicit, the policy covered such motor vehicles whether specifically described therein or not. We believe, as we think Travelers correctly argues, that the forklift was covered by the policy as amended by the endorsement and once covered remained so regardless of where or by whom it was used at the time of the accident. This was what Converse bargained for when it paid its premium.

As to the second point of Transport's argument, we observe at the outset that no reported California decision has been cited to us or discovered by our independent research decisive of the issue as to whether the P.U.C. endorsement made the coverage primary.[12] As we have said, the issue is sharply drawn: Travelers maintains that Transport's coverage is primary; Transport maintains that if there is any coverage at all it is excess. Neither cites any supporting authority. At oral argument, Travelers urged that the coverage was primary because the provisions of the endorsement were unconditional, thereby in effect "wiping out" the other insurance clause quoted above. We think this argument has merit. The endorsement explicitly states that "no condition, provision, stipulation, or limitation contained in the policy . . . shall relieve the Company from liability hereunder . . ."

---

[12]There is some indication in the record that Transport did not urge that its excess clause was operative. Noteworthy are the following excerpts from the memorandum decision of the trial judge: "Transport's policy, *under the Public Utilities Commission Endorsement* was the sum of $15,000.00. It is held that this is the applicable limit of this latter policy, since Transport's special answering brief *acknowledges that this endorsement was in effect* at the time of the accident, and said endorsement provides coverage for 'bodily injury . . . resulting from the *operation, maintenance or use* [original italics] of motor vehicles for which a certificate of public convenience and necessity or permit is required *or has been issued* [original italics] to the insured . . . *regardless of whether such motor vehicles are specifically described in the policy or not* [original italics].' . . . It is also asserted by Travelers' brief, *and not denied by Transport,* that such a policy becomes a primary policy as distinguished from the 'excess' policy of Travelers (and of Transport without the P.U.C. endorsement)." (Italics added.)

We reject Transport's claim that its liability was limited to $5,000 by the provisions of section 402.[13] The gist of its argument is this: that its only liability under the policy was the liability of its insured, Converse, the owner of the forklift; that under section 402 the negligence of Payne and David Ross was imputed to Converse; but that the resultant liability was limited to the sum of $5,000. Such contention is entirely without merit since, as we have shown, Transport's policy covered Payne and David as permissive users of the forklift and afforded them insurance to the applicable limits of the policy. We are of the view that the trial court correctly determined that Transport's policy afforded David Ross primary coverage to the extent of $15,000.

*Travelers' policy provided excess coverage.*

As previously pointed out, Travelers' policy contained an excess clause (see fn. 10, *ante*). Transport appears to have conceded that Travelers' coverage was excess not only in the court below (see fn. 12, *ante*) but in its opening brief on file herein.[14] In its closing brief Transport for the first time contends that Travelers' insurance "is primary insurance and concurrent with any insurance provided by Transport and Colonial herein."

"It is well settled that a point raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present such point before. [Citations.]" (*Duncanson-Harrelson Co.* v. *Travelers Indemnity Co.* (1962) 209 Cal.App.2d 62, 70 [25 Cal.Rptr. 718].) Trans-

---

[13]Former section 402 as in effect on the date of the accident provided in pertinent part: "(a) Every owner of a motor vehicle is liable and responsible for the death of or injury to person or property resulting from negligence in the operation of such motor vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner, and the negligence of such person shall be imputed to the owner for all purposes of civil damages [now § 17150]. (b) The liability of an owner for imputed negligence imposed by this section and not arising through the relationship of principal and agent or master and servant is limited to the amount of five thousand dollars ($5,000) . . . [now § 17151]. . . . (d) In the event a recovery is had under the provisions of this section against an owner *on account of imputed negligence, such owner is subrogated to all the rights of the person injured or whose property has been injured and may recover from such operator the total amount of any judgment and costs recovered against such owner. . . . [now § 17153].*"

[14]Said brief states in pertinent part: "Condition 14 of the Travelers' policy provides that the coverage provided therein is excess when applicable to the operation or use of a non-owned vehicle. Therefore, to the facts in this case *it would be excess over other available insurance.*" (Italics added.)

port gives no reason for this about-face and for not raising the issue of Travelers' primary or excess coverage until its closing brief. While it is somewhat arguable that we need not consider the point, nevertheless we choose to do so because Travelers' closing brief was filed herein over four months after Transport's closing brief. Travelers therefore had, and availed itself of, the opportunity to answer the argument so that at least in the present circumstances it might be said that the reason for the above rule—that a party has no opportunity to reply to the contention—does not exist, although we still do not approve of such practice where no excuse is proffered.

Transport's belated contention on the point can be summarized thusly: That since Travelers' policy was a comprehensive liability policy covering all of the operations of David Ross, the injury to Ralph Ross resulting from the negligence of David's employee Payne came within the insuring agreement noted below;[15] that this coverage was distinct from the mere automobile coverage of the policy; and that under the decision in *Standard Acc. Ins. Co.* v. *Hartford Acc. & Indem. Co.* (1962) 206 Cal.App.2d 17 [23 Cal.Rptr. 424] Travelers' insurance was thus concurrent with Transport's insurance and the two policies must be prorated according to their respective limits. Transport claims that Travelers' position herein is analogous to that of Hartford in the *Standard Accident* case.

But *Standard Accident* is distinguishable from the instant case as the opinion of Division Two of this court in *Miller* v. *Western Pioneer Ins. Co.* (1965) 237 Cal.App.2d 138, 145 [46 Cal.Rptr. 579] makes clear: "There [i.e., in *Standard Accident*] one Norris was injured during the loading of a trailer. Both the Standard policy and the Hartford policy covered the risk, the former being issued to the owner of the trailer and the automobile to which it was attached, and the latter (Hartford) being issued to the employer of the person whose negligence caused the accident. Each policy contained a *prorate* [original emphasis] provision worded substantially the same as the prorate provisions in the two policies involved herein. *However, the Hartford policy did not contain an excess* [original emphasis] *provision in its 'other insurance'*

---

[15] "Coverage A—Bodily Injury Liability. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person and caused by accident."

244

*clause*. We have no doubt that, if the Hartford policy had contained an excess provision, such as is contained in the Pacific Indemnity policy involved herein, the court would have been required to follow the line of precedents cited and discussed above and would have held that Hartford was the excess and not the concurrent or primary insurer.'' (Italics added.)

As we have explained, Transport's policy provided primary coverage. Contrary to Hartford's policy in the *Standard Accident* case, Travelers' policy in the instant case *did* have an excess provision in its other insurance clause. The trial judge correctly determined the respective coverages of each of the policies.

The judgment is affirmed. Respondent Colonial shall recover costs on appeal from appellants Travelers and Transport. Travelers and Transport shall each bear its own cost on appeal.

Molinari, J., and Sims, J., concurred.