[Civ. No. 26539. First Dist., Div. One. May 6, 1970.]

DONAHUE CONSTRUCTION COMPANY et al.,
Plaintiffs and Appellants, v.
TRANSPORT INDEMNITY COMPANY, Defendant and Respondent.

**COUNSEL**

Hoge, Fenton, Jones & Appel and Charles R. Keller for Plaintiffs and Appellants.

Toff, Gordon & Royce and F. John Royce for Defendant and Respondent.

**OPINION**

**MOLINARI, P. J.**—Plaintiffs Donahue Construction Company (hereinafter referred to as "Donahue") and United States Fire Insurance Company (hereinafter referred to as "U.S. Fire") appeal from a judgment in a declaratory relief action brought by them to determine the extent of liability and indemnification available under certain policies issued by defendant Transport Indemnity Company (hereinafter referred to as "Transport") which policies insured a truck owned by West Transportation Company (hereinafter referred to as "West"). This action followed a judgment against Donahue in a personal injury action arising out of an accidental injury to one George Reese during the unloading of West's truck by a crane owned by Donahue. Having satisfied the judgment for $25,524, in the instant action Donahue sought indemnification against Transport under its policy issued to West for said sum of $25,524 together with the sum of $4,146.37, for attorneys' fees and costs incurred in the action brought by Reese against Donahue. Following submission of the cause on an agreed statement of facts, the trial court determined that the policy of insurance issued to Donahue by U.S. Fire was the sole primary insurance for the loss in question and that Transport's policies provided excess coverage only; and Transport was therefore not liable for any portion of the judgment against Donahue.

*Facts*

On November 9, 1962, West was the owner of a truck which had been

sent to a Pacific Gas and Electric Company construction site with a load of pipe to be unloaded at the jobsite along the Carmel Valley Road, a public highway, in Monterey County. Donahue was the owner of a 20-ton mobile truck-crane, also dispatched to this construction site for the purpose of unloading the pipe from the truck. The latter vehicle was licensed and registered under the Vehicle Code of the State of California and required an oversize, overweight permit under the provisions of section 35780 of the Vehicle Code so that it could be moved over public highways. It was being operated under such a permit at the time of the accident.

While the crane was engaged in the process of unloading pipe from the truck, the crane operator, Bazil Kizer, dislodged a piece of pipe from the bed of the truck. This pipe struck and injured George Reese, an employee of the Pacific Gas and Electric Company. In the process of unloading the pipe from the truck, the two vehicles were backed up to one another. Then one or two lengths of pipe were unloaded by affixing a hook to a piece of pipe and then lifting it off the truck. Thereupon the truck and the crane were moved forward a short distance so that the sections of pipe could be unloaded end to end. At the time of the accident both the truck and the crane were stopped. However, the outriggers on the crane had not been extended to make the crane immobile. At the time of this accident, Donahue was insured under a policy of liability insurance issued by U.S. Fire and West was insured by such a policy issued by Transport.

## The Issues

The primary issue in this appeal is whether the insurance policy issued by Transport to West subjects Transport to liability for any portion of the judgment rendered against Donahue, or for costs and attorneys' fees expended by U.S. Fire in defending Donahue. Resolution depends, initially, upon whether, under the terms of the policy issued by U.S. Fire to Donahue, the crane was a "motor vehicle," and, if so, whether this policy provides the sole insurance for the loss occasioned. If it is determined that U.S. Fire does not provide the sole primary insurance, a corollary issue is whether Transport was also primarily liable, and, if so, whether its liability was excess or was subject to proration.

## The Liability Coverage

At the time of the accident the policy of insurance issued by U.S. Fire to Donahue contained the following provisions: "Coverage A — Bodily Injury Liability — Automobile. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because

of bodily injury, . . . sustained by any person, caused by accident and arising out of the ownership, maintenance or use of any automobile. . . .

"III Definition of Insured. The unqualified word, 'insured' includes the named insured and also includes . . . any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission, and any executive officer of the named insured with respect to the use of a non-owned automobile in the business of the named insured. . . .

"3. . . . (b) Automobile. Except where stated to the contrary, the word 'automobile' means a land motor vehicle or trailer as follows:

"(1) Owned automobile—an automobile owned by the named insured; . . .

"The following described equipment shall be deemed an automobile while towed by or carried on an automobile as above defined solely for purposes of transportation or while being operated solely for locomotion, but not otherwise; if of the non-crawler type, any power crane or shovel, . . ."

The U.S. Fire policy issued to Donahue was amended by two endorsements pertinent to the issues of this case. One of these endorsements, designated as the "Oversize-Overweight Permit Endorsement" (hereinafter referred to as the "Oversize-Overweight endorsement") provided for coverage to the limit of $600,000 for bodily injury for each accident on "ALL VEHICLES OPERATED BY THE INSURED" incident to a permit granted to the insured to operate oversize and overweight vehicles and transport loads. The other endorsement, designated as the "STANDARD FORM OF ENDORSEMENT PRESCRIBED BY THE PUBLIC UTILITIES COMMISSION OF THE STATE OF CALIFORNIA" (hereinafter referred to as the "Public Utilities endorsement") and issued pursuant to the orders and rules of the Public Utilities Commission, provided for coverage to the limits of $25,000 for bodily injury "resulting from the operation, maintenance, or use of motor vehicles for which a certificate of public convenience and necessity or permit is required or has been issued to the insured by the Public Utilities Commission of the State of California, regardless of whether such motor vehicles are specifically described in the policy or not."

The primary policy of insurance issued by Transport to West contained the following provisions relevant to this appeal:

"I. COVERAGE CLAUSES (1) To pay on behalf of the insured all damages which the Insured shall become legally obligated to pay, including con-

tractual obligations, for damages which arise out of the occupation of the named insured as stated in the Declarations, as a result of personal injury, bodily injury, . . .

"CONDITIONS . . . (3) . . . (b) INSURED  The unqualified word 'insured' includes the named insured and also includes as respects Coverage Clause 1: if a corporation, any executive officer, director or stockholder thereof while acting within the scope of his duties as such or in so far as he is or may be liable by reason of his occupying such position, or if a partnership, each partner thereof while acting within the scope of his duties as such. . . .

"(6) REGULATORY AUTHORITY REQUIREMENTS  Such insurance as is afforded by this policy shall comply with the provisions of the motor vehicle financial responsibility law and motor carrier regulatory authority requirements of any state or province which shall be applicable with respect to any such liability arising out of the existence, ownership, maintenance or use of any automobile during the policy period but only to the extent of coverage and amount of limits of liability required by such law."

In determining that the sole coverage in the instant case was that provided for in the U.S. Fire policy, the trial court found that the crane was a motor vehicle as defined by Vehicle Code section 670[1] and that it was an "automobile" and a "motor vehicle" under the provisions of the U.S. Fire policy. Plaintiffs contend that this finding is not supported by the facts or the applicable law.

Plaintiffs place strong reliance on *Home Indem. Co.* v. *Transport Indem. Co.*, 263 Cal.App.2d 100 [69 Cal.Rptr. 504]. There, the reviewing court was called upon to interpret language identical to that in the U.S. Fire policy which defines "owned automobile." In that case a crane similar to that in the instant case was held not to be an "automobile" under the terms of the policy because at the time of the accident it was not "being operated *solely* for locomotion."[2] (P. 108; italics added.) The basis for this determination is that under the facts of the *Home* case, the crane was, at the time of the accident, rendered immobile and stationary because its hydraulic outriggers were in place. As observed by the appellate court, "It could not be moved by its own power, or otherwise, until those outriggers were retracted." (P. 108.) With specific reference to the policy coverage, the reviewing court noted as follows: "While it covers a crane while being operated as an automobile, it clearly does not cover a crane which is being operated solely for lifting purposes. The mere fact that both before and after its use as a crane

---

[1]Unless otherwise indicated, all statutory references are to the Vehicle Code.

[2]The appellate court noted that "the crane probably is a motor vehicle under the Vehicle Code." (P. 108.)

it could be operated as an automobile in nowise made its use as a crane one of operation 'solely for locomotion.' " (Pp. 108-109.) In discussing the coverage it was also observed in *Home* that an insurance company has the right to limit the coverage of a policy issued by it and that when it has done so, the plain language of the limitation must be respected. (P. 109; see *Continental Cas. Co.* v. *Phoenix Constr. Co.*, 46 Cal.2d 423, 432 [296 P.2d 801, 57 A.L.R.2d 914].)

A determination identical to that reached in *Home* was arrived at in *Industrial Indem. Co.* v. *General Ins. Co.*, 210 Cal.App.2d 352 [26 Cal. Rptr. 568], a case involving the same type of crane as in *Home* and containing the identical language as the policy under consideration. In *Industrial Indem.* the truck on which the crane was mounted was stationary at the time the crane was in use and its engine operated independently of the truck motor.

A contrary result was reached in *Colby* v. *Liberty Mut. Ins. Co.*, 220 Cal.App.2d 38 [33 Cal.Rptr. 538], under a factual situation more similar to that in the instant case. However, the policy in *Colby* did not contain the definition of "automobile" which is present in the instant case or which was present in *Home* and *Industrial Indem.* (namely, a definition of the automobile which it covered as including a power crane of the non-crawler type "while being operated solely for locomotion").[3] In *Colby* the appellate court held that the crane was a "motor vehicle" within the meaning ascribed to the term "motor vehicle" as defined in section 415[4] and that, therefore, the

---

[3]Although the *Colby* opinion does not give the exact language of the crane coverage, we judicially notice that the clerk's transcript on appeal in that case discloses that the only definition of "automobile" was as follows: "Automobile—The word 'Automobile' shall mean a land motor vehicle, trailer, semi-trailer, converter gear or dolly and its equipment and other equipment permanently attached thereto." Section 459 of the Evidence Code requires that a reviewing court take judicial notice of any matter that the trial court properly noticed or was obliged to notice. Here, the trial court was obliged to notice the subject records of the appellate court if plaintiff (1) had requested that such notice be taken, (2) had furnished the trial court with sufficient information to enable it to take judicial notice, and (3) had given the defendant sufficient notice of the request to enable defendant to prepare to meet it. (Evid. Code, §§ 452, 453.) There is some indication in the record before us that it was called to the trial court's attention that the *Colby* case did not involve the definition of "automobile" which is present in the instant case. But the record is unclear as to whether the "clerk's transcript" was called to the court's attention. Under section 459 on our own motion we could invoke the procedure provided for in subdivision (c) of that section and afford each party a reasonable opportunity to argue the propriety of taking judicial notice of such records. However, since plaintiff made a specific request in his opening brief that we take such notice and since defendant has not indicated any opposition to such request, we assume that defendant agrees that the "clerk's transcript" may be judicially noticed by us.

[4]Section 415 provides as follows: "A 'motor vehicle' is a vehicle which is self-propelled."

automobile policy issued to the owner of the crane covered as a matter of law the operation of that crane by a permissive user. (At p. 45.) At the time of the accident the crane in *Colby* was stationary and was engaged in unloading girders from a truck to a building under construction. With respect to the mobility of the crane, the opinion states only that it was necessary, before proceeding with the unloading operation, "to back the crane up to put it in position." (P. 42; and see fn. 1, p. 42.) The holding in *Colby* appears to have been based on the finding that the crane was a motor vehicle under section 415, and that "While it was being used as a crane at the time of the accident, it was in fact being propelled by means of its motor over a limited portion of the premises in the course of such use." (P. 45.)

In view of the foregoing we perceive the *Home* and *Industrial Indem.* cases to control the definition of "automobile" in the instant policy. This follows from these cases having dealt specifically with the meaning of the language "while being operated solely for locomotion." ■ Accordingly, we conclude under the rationale of these cases that, without regard to the endorsements, the subject crane was not an "automobile" within the terms of the policy considered because, at the time of the accident, it was not "being operated *solely* for locomotion" (italics added) but rather was completely stationary.

Although we conclude that there was no crane coverage under the terms of the policy itself, we must, nevertheless, ascertain whether the endorsements to the policy enlarged its coverage to include the crane while it was being operated solely for lifting purposes. ■ Adverting to the Public Utility endorsement, we observe that it imposes liability for the operation, maintenance, or *use* of motor vehicles for which this endorsement is required, "regardless of whether such motor vehicles are specifically described in the policy or not." With respect to the Oversize-Overweight endorsement, we note that it specifically provides that its coverage extends "to all *vehicles* operated by the insured." (Italics added.) It is apparent that both of these endorsements offer coverage to "vehicles" and that the Public Utility endorsement has specific reference to "motor vehicles." We observe here that these endorsements afford broader coverage than that provided for in the body of the policy. Indeed, the endorsements include coverage for "vehicles" while the policy coverage applies only to "automobiles." We perceive no conflict in meaning between the endorsements and the body of the policy, but even if there were, the applicable rule is that the endorsement controls. (*Continental Cas. Co.* v. *Phoenix Constr. Co., supra,* 46 Cal.2d 423, 430-431; *Home Indem. Co.* v. *Mission Ins. Co.,* 251 Cal.App.2d 942, 956 [60 Cal.Rptr. 544].)

Neither of the endorsements define the terms "vehicle" or "motor vehi-

cle." ■ Therefore, inasmuch as the provisions of the Vehicle Code defining "vehicle" and "motor vehicle" must be considered a part of every policy of liability insurance even though the policy itself does not specifically make such laws a part thereof (*Wildman* v. *Government Emp. Ins. Co.,* 48 Cal.2d 31, 39-40 [307 P.2d 359]; *Travelers Indem. Co.* v. *Colonial Ins. Co.,* 242 Cal.App.2d 227, 233, 236-237 [51 Cal.Rptr. 724]), we must look to the definitions of these terms as they are defined in the Vehicle Code.

■ Section 670 defines a "vehicle" as "a device by which any person or property may be propelled, moved, or drawn upon a highway, excepting a device moved by human power or used exclusively upon stationary rails or tracks." Section 415 defines a "motor vehicle" as "a vehicle which is self-propelled." Under these definitions the only distinction between a "motor vehicle" and a "vehicle" appears to be that the former is a device self-propelled, while the latter is a device propelled by its own force or by some other nonhuman force or power. It is clear, therefore, that under these definitions the mobile truck-crane in the instant case was both a "vehicle" and a "motor vehicle." It was self-propelling and, even while at complete rest, also a device which could be "propelled, moved, or drawn upon a highway." (See *Travelers Indem. Co.* v. *Colonial Ins. Co., supra,* at p. 237.)

■ In view of the foregoing, we conclude that the exclusionary clause in the body of the policy (i.e., limiting coverage to use *solely* for the purpose of locomotion) was superseded by the terms of the endorsements. Indeed, such endorsements plainly sought to provide compensation to persons injured as the result of the negligent operation of devices coming under the Vehicle Code definitions of "vehicle" and "motor vehicle." Accordingly, as amended by the endorsements, the crane is covered as a vehicle under the U.S. Fire policy.

■ Considering the endorsements, we observe that the Oversize-Over-weight endorsement insured "the named insured" while operating "all vehicles operated *by the insured*" (italics added) and that the Public Utilities endorsement covers "the insured." This terminology clearly refers to Dona-hue. It also includes Kizer, the crane operator. Since the definition of the unqualified word "insured" in the body of the policy has reference only to persons using "automobiles," Kizer is not specifically named as an insured in the policy. He is, however, an additional insured by virtue of the provi-sions of section 16451. (See *Wildman* v. *Government Emp. Ins. Co., supra,* 48 Cal.2d 31, 39-40.) That section, as it read at the time of the accident, extended coverage to any person using any "described motor vehicle" with the express or implied permission of the named insured.[5]

---

[5]Under the Oversize-Overweight endorsement the described vehicles are "ALL VEHICLES OPERATED BY THE INSURED." In the Public Utilities endorsement the

Having determined that the U.S. Fire policy afforded coverage to Donahue and Kizer for the loss incurred, we proceed to determine whether Transport's policy provided coverage for injury occasioned by Donahue and Kizer. Our immediate inquiry is whether Donahue and Kizer, as the operators of the crane, were persons insured under the policy issued by Transport to West. That policy does not define the word "insured" as including any person using West's automobile. It does, however, contain a provision stating that it shall comply with the provisions of the "motor vehicle financial responsibility law." As already pointed out, section 16451, a part of division 7 of the Vehicle Code, which in turn contains California's Financial Responsibility Laws, must be read into every policy of motor vehicle insurance. (See also § 17150.) Accordingly, if Kizer and Donahue were "using" West's truck at the time of the accident they became additional insureds under Transport's policy. ■ The term "use" includes within its meaning the loading or unloading of an insured motor vehicle. (*American Auto. Ins. Co.* v. *Transport Indem. Co.*, 200 Cal.App.2d 543, 549 [19 Cal.Rptr. 558]; *Columbia Southern Chemical Corp.* v. *Manufacturers & Wholesalers Indem. Exchange*, 190 Cal.App.2d 194, 202 [11 Cal. Rptr. 762]; *Colby* v. *Liberty Mut. Ins. Co.*, *supra*, 220 Cal.App.2d 38, 45.) Since it is undisputed that Donahue and its employee Kizer were loading and unloading West's truck at the time of the accident, they were "using" the truck and were therefore additional insureds under Transport's policy.

### Other Insurance

Transport contends that even if it is true that Kizer and Donahue were additional insureds under the policy issued by it to West, nevertheless its liability is excess insurance over and above the applicable limits of the policy issued by U.S. Fire to Donahue. In making this contention Transport relies on the "Other Insurance" provision of its policy which provides: "If there is other insurance against an occurrence covered by this policy, this insurance shall be deemed excess insurance over and above the applicable limits of all such other insurance."

Before considering Transport's contention we note that the "Other Insurance" provision of the U.S. Fire policy reads as follows: "If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; . . ."

---

described vehicles are motor vehicles for which a Public Utilities permit was required or issued "regardless of whether such motor vehicles are specifically described in the policy or not."

In *Fireman's Fund etc. Co.* v. *State Farm etc. Co.,* 273 Cal.App.2d 445, 449-450 [78 Cal.Rptr. 38],[6] it was recently pointed out that there are two lines of decisions dealing with multiple insurance coverage containing the respective "other insurance" clauses which we find in the instant policies. In one line of cases it has been held that where one policy contains a proration clause (as does the U.S. Fire policy) and another policy contains an "excess insurance" clause (as does the Transport policy) the loss must be prorated. (*Colby* v. *Liberty Mut. Ins. Co., supra,* 220 Cal.App.2d 38, 47-48; *Apparel Mfrs'. Supply Co.* v. *National Auto. & Cas. Ins. Co.,* 189 Cal.App.2d 443, 472-474 [11 Cal.Rptr. 380]; *Truck Ins. Exchange* v. *Torres,* 193 Cal.App.2d 483, 489-491 [14 Cal.Rptr. 408]; *American Auto. Ins. Co.* v. *Seaboard Surety Co.,* 155 Cal.App.2d 192, 198-199 [318 P.2d 84]; *Peerless Cas. Co.* v. *Continental Cas. Co.,* 144 Cal.App.2d 617, 619-623 [301 P.2d 602]; *Air etc. Co.* v. *Employers' Liab. etc. Corp.,* 91 Cal.App.2d 129, 132-134 [204 P.2d 647].)[7] The cases which have reached this result have done so either on the basis of a reconciliation of the language of the policy provisions without consideration of the equities (*Colby* v. *Liberty Mut. Ins. Co., supra; Truck Ins. Exchange* v. *Torres, supra; Apparel Mfrs'. Supply Co.* v. *National Auto. & Cas. Ins. Co., supra; American Auto. Ins. Co.* v. *Seaboard Surety Co., supra*), or through the imposition of overriding equitable considerations. (*Air etc. Co.* v. *Employers' Liab. etc. Corp., supra; Peerless Cas. Co.* v. *Continental Cas. Co., supra.*) Where the solution has been effected on the basis of the respective policy provisions independently of the equities, the policy providing for proration renders the insurer liable for a prorata portion of the loss based on the proportion that its total policy limits bears to the total policy limits provided for in the policy containing the excess insurance clause. Accordingly, proration is had in accordance with the terms of the policy providing for proration. (See *Truck Ins. Exchange* v. *Torres, supra; Colby* v. *Liberty Mut. Ins. Co., supra; Apparel Mfrs'. Supply Co.* v. *National Auto. & Cas. Ins. Co., supra; American Auto. Ins. Co.* v. *Seaboard Surety Co., supra.*)

The other line of decision holds to the contrary. In these cases it is held that the policy with the proration clause is primary and must bear the loss to its policy limits. (*Pacific Employers Ins. Co.* v. *Maryland Cas. Co.,* 65 Cal.2d 318, 327-329 [54 Cal.Rptr. 385, 419 P.2d 641]; *Continental Cas. Co.* v. *Zurich Ins. Co.,* 57 Cal.2d 27, 34-35 [17 Cal.Rptr. 12, 366 P.2d 455]; *American Auto. Ins. Co.* v. *Republic Indem. Co.,* 52 Cal.2d 507, 511-513 [341 P.2d 675]; *Universal Underwriters Ins. Co.* v. *Aetna*

---

[6]No petition for a hearing in the Supreme Court was filed.

[7]In all of these cases, excepting *Peerless,* the Supreme Court denied a hearing. In that case no petition for a hearing was filed.

*Ins. Co.,* 249 Cal.App.2d 144, 152 [57 Cal.Rptr. 240]; *Fireman's Fund etc. Co.* v. *State Farm etc. Co., supra; Ohio Farmers Indem. Co.* v. *Inter-insurance Exchange of Auto. Club,* 266 Cal.App.2d 772, 777 [72 Cal.Rptr. 269]; *Wilshire Ins. Co.* v. *Transit Cas. Co.,* 248 Cal.App.2d 719, 724 [56 Cal.Rptr. 861]; *Firemen's Ins. Co.* v. *Continental Cas. Co.,* 170 Cal.App.2d 698, 705 [339 P.2d 602]; *Pleasant Valley etc. Assn.* v. *Cal-Farm Ins. Co.,* 142 Cal.App.2d 126, 136 [298 P.2d 109].)[8] The rationale of these cases is based upon the general rule "that courts will give heed to the excess insurance provisions contained in policies, even in situations where to do so will be inconsistent with proration provisions in the other policies." *(Pacific Employers Ins. Co.* v. *Maryland Cas. Co., supra,* at p. 328; *Fireman's Fund etc. Co.* v. *State Farm etc. Co., supra,* at pp. 449-450.)

Since the Supreme Court has enunciated the rationale of the last-mentioned line of cases and has not embraced that declared in the previously mentioned line of decisions, we are constrained, as was the court in *Fireman's Fund,* to follow the rule of *Pacific Employers.* ■ Accordingly, in the present case the coverage of the U.S. Fire policy was primary to the extent of its policy limits, and the coverage of Transport was "excess insurance" over and above the limits of the U.S. Fire policy. Therefore, since the limit of liability in the U.S. Fire policy for the injury to Reese was $600,000 and the total amount of the loss in the sum of $25,524 was within these limits, U.S. Fire was solely liable for the loss herein involved.

### Bad Faith

Plaintiffs finally contend that the refusal by Transport to accept the tender of defense by Donahue constituted bad faith on the part of Transport and makes Transport liable for the full amount of the judgment, attorneys' fees and costs of defense incurred by them in the Reese action. This contention is without merit.

Initially we observe that Donahue has not incurred any payment for the judgment or the defense costs. Rather, these were expended by U.S. Fire under its obligation to indemnify and defend Donahue under its policy of insurance issued to Donahue. The cases cited by plaintiffs[9] involve situations in which a single insurance carrier, obligated to defend an action on a claim covered by its policy, did not act in good faith in refusing to settle the claim within its policy limits or in refusing to defend an action against

---

[8]In all of the Court of Appeal cases, excepting *Wilshire,* petitions for hearing were filed in the Supreme Court and were denied.

[9]*Comunale* v. *Traders & General Ins. Co.,* 50 Cal.2d 654 [328 P.2d 198, 68 A.L.R.2d 883]; *Palmer* v. *Financial Indem. Co.,* 215 Cal.App.2d 419 [30 Cal.Rptr. 204]; and *Gray* v. *Zurich Ins. Co.,* 65 Cal.2d 263 [54 Cal.Rptr. 104, 419 P.2d 168].

its insured. Contrawise, in the present case Donahue was not left without a defense or coverage but was adequately defended by U.S. Fire under its obligation to do so. ■ As regards U.S. Fire, its liability was fixed with respect to its obligation to Donahue. In respect to Transport, Donahue could only look to that company for any liability in excess of the policy limits of U.S. Fire's policy. Since Donahue was adequately protected under the U.S. Fire policy, the refusal by Transport to defend Donahue did not enhance Donahue's liability or exposure to liability.

In any event, in view of the inherent problems attendant upon a consideration of conflicting proration and excess clauses in insurance policies, we perceive no bad faith on the part of Transport. It is significant to note here that each of the contending carriers are urging even yet that the other is primarily and solely liable. The very nature of this dispute belies bad faith. We observe, moreover, that the issue of bad faith was not alleged in the complaint or delineated as an issue in the pretrial order. Further, it was not referred to in the recital of the stipulated facts. ■ We also note that whether or not an insurer is guilty of bad faith is a question for the trier of fact in each case. (*Palmer* v. *Financial Indem. Co., supra,* 215 Cal.App.2d 419, 427-433; *Hodges* v. *Standard Acc. Ins. Co.,* 198 Cal.App.2d 564, 574 [18 Cal.Rptr. 17].) For all of these reasons the trial court did not err in failing to make a specific finding on the issue of bad faith, even though specifically requested to do so. Indeed, this was not even at issue in the case.

The judgment is affirmed with directions to the court below to amend its findings of fact and conclusions of law in conformity with this opinion.

Sims, J., and Elkington, J., concurred.